THE STATE OF OHIO, APPELLEE, *v.* MILLS, APPELLANT.

[Cite as *State v. Mills* (1992), 62 Ohio St.3d 357.]

(No. 91–172—Submitted October 15, 1991—Decided January 8, 1992.)

*Arthur M. Ney, Jr.*, Prosecuting Attorney, and *Christian J. Schaefer*, for appellee.

*H. Fred Hoefle* and *Kenneth J. Koenig*, for appellant.

WRIGHT, J. We are required by R.C. 2929.05(A) to review Mills's twenty-six propositions of law. We are also charged with making an independent review of the record to determine whether the aggravating circumstance outweighs the mitigating factors asserted beyond a reasonable doubt. Last, we must decide whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases. For the reasons set forth below, we affirm the convictions, with certain exceptions, and uphold the sentence of death.

## I

We first address defendant's asserted errors that arise from pretrial procedures and decisions. Defendant challenges the joinder of offenses (proposition of law twenty-five [B]),[1] the form of the indictment (proposition of law nineteen), the prosecutor's failure to disclose vital evidence (proposition of law twenty-one), the court's failure to grant a change of venue (proposition of law twenty-three), the exclusion of prospective jurors that were opposed to the death penalty (proposition of law fifteen), and the court's rulings on the number of peremptory challenges and the defendant's proposed jury questionnaire (proposition of law sixteen).

## A

### Joinder of Offenses

In proposition of law twenty-five (B), Mills argues that the Bond Hill and St. Bernard robberies were distinct events and the trial court erred by consolidating the two indictments for trial.

Under Crim.R. 13, two indictments may be tried together if the offenses could have been joined in a single indictment. Under Crim.R. 8, offenses "of the same or similar character," those "based on two or more acts or transactions connected together or constituting parts of a common scheme or plan," or those that "are part of a course of criminal conduct" may be joined. The law favors joining multiple offenses in a single trial under Crim.R. 8(A). *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293, 298; *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 20 O.O.3d 313, 315, 421 N.E.2d 1288, 1290.

In addition to being offenses "of the same or similar character," these two robberies meet the "common scheme or plan" or "course of criminal conduct" tests of Crim.R. 8. Mills and his accomplice, Thomas, allegedly robbed two branches of the same small Cincinnati bank. There was testimony that Mills and Thomas asked Bryant, their accomplice in the first robbery, to join them in the second robbery. Two of the bank's employees witnessed or were present at both robberies. In both robberies, the suspect was masked, but removed his mask temporarily. On both occasions, the suspect held a gun directly to the head of a bank employee, had a safe opened instead of the main vault, and had multiple cars at the site for escape. The robberies occurred approximately three months apart, and the branch banks were both within

---

1. Two separate propositions of law were labeled as proposition of law twenty-five in appellant's brief. We will refer to these propositions as proposition of law twenty-five (A) and twenty-five (B), respectively.

Hamilton County. These facts demonstrate that both robberies were committed as part of a common plan or a common course of criminal conduct.

Once two offenses have been joined, the defendant may move to sever under Crim.R. 14 if he can establish prejudice to his rights. See *State v. Wiles* (1991), 59 Ohio St.3d 71, 76, 571 N.E.2d 97, 108; *State v. Lott, supra,* 51 Ohio St.3d at 163, 555 N.E.2d at 298. The "joinder test" is one way in which the prosecutor may challenge a defendant's claim of prejudice. *State v. Lott, supra; State v. Torres, supra; State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 204, 405 N.E.2d 247, 251. Indeed, if the state can meet the joinder test, it need not meet the stricter "other acts" test of Evid.R. 404(B). *State v. Lott, supra.* The joinder test requires that the evidence of the joined offenses be simple and direct, so that a jury is capable of segregating the proof required for each offense. The rule seeks to prevent juries from combining the evidence to convict of both crimes, instead of carefully considering the proof offered for each separate offense. *State v. Lott, supra; State v. Roberts, supra.*

In this case, the evidence of both crimes is patently both simple and direct. A teller present at the Bond Hill robbery identified Mills based on a face-to-face confrontation. The bulk of the evidence offered on this charge was from the testimony of Bryant, a coconspirator who testified that he was also asked to participate in the St. Bernard robbery.

The evidence of Mills's role in the St. Bernard robbery is also simple and direct. The witnesses outside the bank identified the suspect who shot at the officers as Mills. The entire crime was filmed by the bank's camera, including showing which suspect shot Marsha Burger. The shoeprint on the bank counter matched one of Mills's gym shoes, and his car matched the description given by several witnesses. One witness even wrote down a license plate number at the scene, which was identical to Mills's except that two letters were transposed. Finally, one of the police officers shot at the Camaro as it drove off, and a bullet hole was found in the car's radiator after the police seized Mills's car. The evidence makes it unlikely that the jury would confuse the two offenses, and Mills has not argued how he could have defended differently if the indictments had not been tried together. Thus, his proposition twenty-five (B) lacks merit. See *State v. Lott, supra; State v. Wiles, supra.*

## B

### Specificity in Indictment

In his nineteenth proposition of law, Mills claims that counts three and four, the two counts of attempted aggravated murder, were defective because they

did not describe the victims. Under Crim.R. 7(B), an indictment may be made in ordinary and concise language, including statutory language, and the indictment is sufficient if it gives the defendant notice of all elements of the charged offense. Moreover, even if this indictment was defective, Mills did not complain before trial about this alleged defect and thus did not preserve any error. Under Crim.R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived. Furthermore, at trial, the prosecutor noted that count three concerned Officer Heller and count four concerned Officer Schindler, and defense counsel noted "no objection." The court advised counsel that it would instruct the jury to this effect, and defense counsel agreed. Defendant has waived any objection to defects in the indictment.

## C

### Disclosure of Records

The twenty-first proposition of law states that the prosecutor failed to disclose vital information to which the defense was entitled under *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and R.C. 149.43. This issue arose when the prosecutor, in cross-examining Mills's girlfriend, revealed that the police had tape recorded their interview with her on the day of the robbery. The tape-recorded interview was used to impeach her testimony. On direct examination, she testified that Mills was at her apartment between 12:20 and 12:30 on the afternoon of the robbery. In the tape-recorded interview, she had said that the time was around 1:00 p.m. The exact time that Mills was at her apartment is not crucial to his alibi because he admitted on cross-examination that he did not know his whereabouts during the time of the robbery-murder. As a result, Mills has not shown that her prior statement was material or that her statement was exculpatory under *Brady v. Maryland, supra,* or, most importantly, that he suffered prejudice. Furthermore, R.C. 149.43 does not apply in this situation. Thus, this proposition lacks any merit.

## D

### Venue

The twenty-third proposition of law urges reversal because the trial judge erred in not granting a change of venue due to extensive pretrial publicity.

Ohio law explicitly recognizes the trial court's obligation to change venue "when it appears that a fair and impartial trial cannot be held in the court * * *." Crim.R. 18(B); former R.C. 2901.12(J) (now [K]). Absent a clear

abuse of discretion, however, the trial court's decision controls. *State v. Maurer* (1984), 15 Ohio St.3d 239, 250, 15 OBR 379, 388–389, 473 N.E.2d 768, 780; *State v. Fairbanks* (1972), 32 Ohio St.2d 34, 37, 61 O.O.2d 241, 243, 289 N.E.2d 352, 355.

The trial judge conducted a week-long, extensive, individual voir dire of all prospective jurors. The publicity that did occur was not sensational, and few jurors could remember the details of the publicity. As the state points out, none of the seated jurors equivocated on his or her ability to be impartial, and none was challenged for cause on that basis. "[A] careful and searching *voir dire* provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality." *State v. Bayless* (1976), 48 Ohio St.2d 73, 98, 2 O.O.3d 249, 262, 357 N.E.2d 1035, 1051. See *State v. Thompson* (1987), 33 Ohio St.3d 1, 5, 514 N.E.2d 407, 412–413.

The pretrial publicity did disclose Mills's two prior bank robbery convictions; however, Mills introduced that evidence at trial. Under all of the circumstances, Mills has not demonstrated an abuse of discretion, and proposition twenty-three is overruled. See *State v. Landrum* (1990), 53 Ohio St.3d 107, 116, 559 N.E.2d 710, 722; *State v. Spirko* (1991), 59 Ohio St.3d 1, 23–24, 570 N.E.2d 229, 254; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, 170–171.

## E

### Exclusion of Jurors

The fifteenth proposition of law claims that the trial court improperly excluded four prospective jurors because of their general opposition to the death penalty. The proper standard for excusing such jurors " * * * is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath." *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, paragraph three of the syllabus, vacated and remanded on other grounds (1985), 474 U.S. 1002, 106 S.Ct. 518, 88 L.Ed.2d 452, following *Wainwright v. Witt* (1985), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841. Contrary to Mills's claims, we have not abandoned the *Wainwright* test. See *State v. Steffen* (1987), 31 Ohio St.3d 111, 120–121, 31 OBR 273, 281, 509 N.E.2d 383, 393; *State v. DePew* (1988), 38 Ohio St.3d 275, 280, 528 N.E.2d 542, 549.

The challenged prospective jurors all expressed fixed positions from which the trial judge could conclude that their views would substantially impair their ability to serve as jurors. Hence, the trial judge did not abuse his discretion in excusing these prospective jurors. *State v. Scott* (1986), 26 Ohio St.3d 92,

96, 26 OBR 79, 82, 497 N.E.2d 55, 59; *State v. Steffen, supra,* 31 Ohio St.3d at 120, 121, 31 OBR at 281, 509 N.E.2d at 393.

### F

### Peremptory Challenges/Questionnaire

In proposition of law sixteen, Mills contends that the trial court should have allowed him twenty-four peremptory challenges because this is a capital case and because of the pretrial publicity. However, Ohio law permits only six peremptory challenges in a death penalty case, and Mills asserts no cogent reasons why that rule should be changed. See *State v. Greer* (1988), 39 Ohio St.3d 236, 244–246, 530 N.E.2d 382, 394–396.

Mills further argues that the trial court's failure to distribute a defense-proposed jury questionnaire interfered with his right to examine prospective jurors. However, the trial judge found that appellant's questionnaire unnecessarily intruded on juror privacy rights. The trial judge had discretion to limit voir dire and did not abuse his discretion in rejecting this specific defense questionnaire. See *State v. Bedford* (1988), 39 Ohio St.3d 122, 129, 529 N.E.2d 913, 920. The trial judge allowed defense counsel to freely question prospective jurors during voir dire. Thus Mills's right to a meaningful voir dire was fully preserved.

### II

### *Suppression of Evidence*

This part of the opinion addresses defendant's arguments that certain evidence admitted at trial should have been suppressed. Defendant claims that several of his pretrial statements (proposition of law twenty) and the evidence found during the search of his car (proposition of law twenty-two) should not have been admitted.

### A

### Accused's Pretrial Statements

Proposition of law twenty challenges the trial judge's decision to admit three pretrial oral statements. Mills claims that he repeatedly asked for an attorney on May 23, but police denied him access to counsel until the next day.

Although Mills testified that he did not receive *Miranda* warnings, two police officers testified that Mills was advised of his rights; one officer asserting that it was done more than once. Mills asserted that he asked for a lawyer "a hundred times." Neither of the police officers recalled even one

such request. Thus, the testimony diverged sharply at the pretrial suppression hearing.

When arrested, Mills denied the offense and asserted that Thomas falsely tried to implicate him. Later, after the officer fingerprinting Mills told another officer that Mills was one of the suspects, Mills remarked casually, "she didn't give me what I wanted." This remark did not respond to any form of interrogation and was thus fully admissible. *Colorado v. Connelly* (1987), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473; *Rhode Island v. Innis* (1980), 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297.

The crucial suppression issue concerns the admission that Mills shot someone. After a police lineup, Mills said he wanted to say something to the witnesses, and in response Police Officers Hennekes and Rowland were directed to interview him. After advising him of his rights, Hennekes told Mills that the evidence against him was compelling: "[W]e had the pictures. * * * [W]e got your car, it's got a bullet hole in it. We got your partner. * * * We got your girlfriend. * * * [I]f there's some mitigating circumstances or some reason * * * let me know now." Mills "started screaming and hollering. He said, hey man, I've been in this shit too long, I can't be conned. * * * [T]here ain't no mitigating circumstances, I just shot the * * * bitch."

The trial judge did not believe that Mills had asked for a lawyer. At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 58, 437 N.E.2d 583, 584. Under the circumstances, the trial court legitimately concluded that Mills's statements were not taken in violation of his constitutional rights. See *State v. Broom* (1988), 40 Ohio St.3d 277, 285–286, 533 N.E.2d 682, 693. Thus, proposition twenty is rejected.

## B

### Results of Search

Mills next claims that the magistrate who authorized the search of Mills's Camaro lacked sufficient information upon which to base a finding of probable cause.

At the outset, we reject the state's argument that Mills abandoned the Camaro and had no standing to challenge the search of the car. At most, Mills testified that his car did not work properly and he had not driven it that day. This does not constitute abandonment. Cf. *State v. Freeman* (1980), 64 Ohio St.2d 291, 296–298, 18 O.O.3d 472, 475–476, 414 N.E.2d 1044, 1048–1049, with *United States v. Bagley* (C.A.9, 1985), 772 F.2d 482, 489.

Mills relies primarily upon alleged defects in the affidavit used to secure the search warrant. Police specialist Joe Hoffmann, who prepared that affidavit,

asserted that the vehicle was registered to James Mills, that it matched the robbery vehicle, and that Mills was seen leaving the scene of the robbery. Mills argues that no one had identified him at the time as a robber, or the driver of the vehicle; accordingly, the affidavit was false.

However, police discerned that the car found at North Crescent Avenue was registered in Mills's name from a computer registration check. In this case, the fact that the vehicle's license plate number and physical description matched or nearly matched that of the robber's vehicle demonstrated " * * * a fair probability that contraband or evidence of a crime * * * " would be found in the Camaro. *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548. Appellate courts should accord great deference to the magistrate's judgment. *State v. George* (1989), 45 Ohio St.3d 325, 329, 544 N.E.2d 640, 645.

Moreover, the police could have searched the automobile even without a warrant. The well-established automobile exception allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure. *Chambers v. Maroney* (1970), 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428; *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. The mobility of automobiles often creates exigent circumstances, and is the traditional justification for this exception to the Fourth Amendment's warrant requirement. *California v. Carney* (1985), 471 U.S. 386, 391, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406, 413. Certainly, discovery of a vehicle suspected to have been used recently in a robbery creates an immediate need to act, before the automobile can be removed. If the police had probable cause for the search, the search was constitutional.

Three facts sustain probable cause. It was obvious that the Camaro had just been driven because it was warm. The description and license plate number of the car matched or nearly matched the description of the robber's vehicle. Police found the car at Lewis Thomas's residence, and he had been apprehended near the scene as one of the robbers. Together, we believe these facts justified the search even without a warrant. See *United States v. McBee* (C.A.5, 1981), 659 F.2d 1302; *United States v. Alexander* (C.A.11, 1988), 835 F.2d 1406; *United States v. Bagley, supra,* at 490–491.

### III

#### *Trial Issues*

We next consider those errors that Mills claims arose at trial. He challenges the sufficiency of the evidence (propositions of law seventeen, eigh-

teen, and twenty-four), claims that his counsel was ineffective because he did not move to suppress certain statements (proposition of law twenty-five [A]), and claims that the 1975 bank robbery conviction was improperly admitted as impeachment evidence (proposition of law twenty-six).

A

Sufficiency of Evidence

Proposition of law twenty-four contests the sufficiency of the evidence that established Mills's identity as the St. Bernard and Bond Hill robber. Mills argues that certain of the witnesses's testimonies could not be believed, that the robber was masked, and that one of the witnesses saw him on television before identifying him as the robber.

In a review for sufficiency, we must construe the evidence in a light most favorable to the prosecution. The test is whether a reasonable jury, considering the evidence as so construed, could have found all essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Davis* (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925, 930.

Here, the evidence was simply compelling that Mills robbed the St. Bernard branch bank. Four eyewitnesses identified Mills as the gunman. "The jurors see the witnesses and observe their demeanor. The credibility to be given to each and all * * * is for the jury." *State v. Petro* (1947), 148 Ohio St. 473, 501, 36 O.O. 152, 163, 76 N.E.2d 355, 369. Other probative evidence supports Mills's conviction. Police found his identifiable shoeprint on the bank counter. Other witnesses identified Mills's Camaro by the license plate number and description, when he drove the car away from the scene, and police found a bullet hole in the car's radiator. Police found the fingerprints of Mills and Thomas on Mills's car and a stocking mask inside. Their accomplice in the first robbery, Bryant, testified that Thomas and Mills asked him to help rob the St. Bernard branch. Mills's post-arrest statements, especially that he had shot someone, support his guilt.

The jury also had sufficient evidence to convict Mills of the Bond Hill robbery. A teller saw Mills close up, without his mask, and identified him as the robber. His accomplice, Bryant, testified at length about Mills's role in the crime. The jury's responsibility was to assess the credibility of the witnesses, and, as construed in favor of the prosecution, the evidence was more than sufficient. See *State v. Flonnory* (1972), 31 Ohio St.2d 124, 60 O.O.2d 95, 285 N.E.2d 726 (accomplice testimony alone can sustain conviction); *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132.

In proposition of law seventeen, Mills claims that the evidence cannot sustain convictions for counts five, six, and seven, charging felonious assault, R.C. 2903.11, against tellers Johnson, Laster, and Kamphaus. When Mills first entered the St. Bernard branch, he fired a shot that struck the counter. Mills claims that the gunshot was an attention-getting device, not intended to harm anyone, and that no other evidence supports those counts.

The evidence emphatically supports Mills's conviction for feloniously assaulting Johnson, since the shot almost hit Johnson. Johnson testified that the bullet "was almost directly at me. If it would probably be two inches higher it might have gotten me." Then someone hit Johnson's head with a hard object, and Johnson feigned unconsciousness. In view of Johnson's proximity to the bullet, immediately followed by a hard blow to his head, the jury could find that Mills feloniously assaulted Johnson. Likewise, the evidence also supports the conviction for feloniously assaulting Laster. When Mills fired that initial shot, Laster stood approximately two to three feet to Johnson's right and thus was not in the bullet's path. However, Mills later held a gun directly to Laster's head, and after Mills shot Burger, Laster believed that Mills would shoot her next.

Mills argues that "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *State v. Brooks* (1989), 44 Ohio St.3d 185, 542 N.E.2d 636, syllabus. However, Mills did more than just point a deadly weapon. He actually fired a shot at the outset, hit Johnson over the head with a gun, and held a gun to Laster's head. Thus, the jury had a basis for finding Mills guilty of the felonious assault charge against Johnson and Laster. See *State v. Green* (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038; *State v. Brooks, supra,* 44 Ohio St.3d at 196, 542 N.E.2d at 646 (Moyer, C.J., concurring).

However, the evidence does not support a conviction for felonious assault of Kamphaus. When the initial shot was fired, she was standing near a desk area located behind the teller counter and off to one side. She was not in the line of fire when the gunman entered and hid underneath her desk during the remainder of the robbery. The evidence is insufficient to support the finding that Mills knowingly attempted to physically harm Kamphaus. R.C. 2903.11. Accordingly we reverse this conviction.

In proposition of law eighteen, Mills argues that the evidence cannot sustain his conviction for attempted aggravated murder of officer Schindler. Mills argues that he aimed at Schindler, but never fired at him. Mills contends that merely aiming a firearm cannot sustain an attempted aggravated murder conviction. See *State v. Brooks, supra.*

We agree. The evidence shows that after Schindler fired two shots at him, Mills turned and pointed his gun at him, but then ran. As Mills was running, he turned and aimed at Schindler several more times. Mills never fired a shot at Schindler, or pursued him. These facts are insufficient to demonstrate that Mills attempted to purposely cause the death of Police Officer Schindler. R.C. 2903.01(B) and 2923.02(A). Accordingly, we must reverse the jury's conviction on this count.

## B

### Ineffective Assistance of Counsel

In proposition of law twenty-five (A), Mills asserts that his counsel did not provide effective assistance because he did not move to suppress certain identification testimony. According to Mills, this identification testimony was either suggested or contrived, and he had no lawyer at the lineup; thus, suppression was appropriate.

This argument fails because Mills's attorney had no basis to move to suppress the identification testimony. First, Mills did not have a Sixth Amendment right to counsel at the time of the line-up. "The Sixth Amendment right to counsel attaches only when adversarial proceedings are initiated against an individual for a particular incident by way of indictment, information, arraignment, or preliminary hearing." *State v. Broom, supra,* 40 Ohio St.3d at 293–294, 533 N.E.2d at 700; *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. The right does not extend to a line-up after arrest, but before any of the listed formal proceedings. *Kirby v. Illinois, supra.* Second, Mills did have the right to an attorney if he had requested one under *Miranda.* However, the trial court did not believe that he had invoked this right at the time of the line-up. Finally, an identification can be so unnecessarily suggestive that it denies the defendant due process of law. *Stovall v. Denno* (1967), 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206. However, Mills does not allege any facts that support this argument in his case. He bases his argument on the conflicting testimony over whether the suspect ever removed his mask. This conflicting testimony does not support the argument that the line-up procedure in and of itself violated due process of law.

A defendant does not state a claim for ineffective assistance of counsel unless his attorney acted unreasonably given the facts of the case, and the unreasonable conduct was prejudicial to the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 690–692, 104 S.Ct. 2052, 2066–2067, 80 L.Ed.2d 674, 695–696. Mills's counsel was not unreasonable in failing to move to suppress the identifications.

## C

### Prior Convictions

Proposition twenty-six states that the trial court erred by allowing the prosecutor to impeach Mills's credibility with his 1975 bank robbery conviction. Mills argues that the trial court did not find that the probative value of the evidence *substantially outweighs* its prejudicial effect as required by Evid.R. 609(B).

Initially, we note that Mills did not challenge the use of this conviction at trial. The state filed a pretrial motion to give Mills notice of its intention to use his prior conviction for bank robbery in 1969. Mills's counsel elected to defer his objection pending a decision on whether Mills would take the stand. On direct examination, Mills himself testified about his prior convictions in 1969 and 1975, and, in response, the state used the evidence to impeach his credibility during cross-examination. No objection was made at that time. Accordingly, the plain-error standard of Crim.R. 52(B) governs our analysis. See *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899; *State v. Greer, supra,* 39 Ohio St.3d at 244, 530 N.E.2d at 394.

The 1975 bank robbery conviction is not more than ten years old as defined by Evid.R. 609(B). The ten-year period in Evid.R. 609(B) is measured from "the date of the conviction *or* of the release of the witness from *the confinement,* or the *termination* of probation, or shock probation, or *parole,* or shock parole imposed for that conviction, *whichever is the later date* * * *." (Emphasis added.)

Ten years had *not* elapsed from any "later date" because Mills was not released from prison for the 1975 bank robbery conviction until 1983. Accordingly, the applicable standard for the use of this conviction to impeach the accused is whether the probative value of the evidence *outweighs* the danger of unfair prejudice. Evid.R. 609(A)(2). The trial court did not abuse its discretion in making this determination. We find no error, plain or otherwise.

## IV

### Constitutionality

In proposition of law eleven, Mills attacks the constitutionality of Ohio's death penalty statute using a variety of arguments that we have already rejected.

In proposition of law eleven (A), Mills asserts that the death penalty serves no rational state interest. We rejected this argument in *State v. Jenkins* (1984), 15 Ohio St.3d 164, 167–168, 15 OBR 311, 314, 473 N.E.2d 264, 272–273.

Proposition of law eleven (B) and proposition of law fourteen state that the death penalty is imposed in a discriminatory manner, in violation of the Fourteenth Amendment. We have previously held that the death penalty in Ohio has not been applied in violation of the Fourteenth Amendment. *State v. Sowell* (1988), 39 Ohio St.3d 322, 335–336, 530 N.E.2d 1294, 1308–1309; *State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585, syllabus; *McCleskey v. Kemp* (1987), 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262.

Proposition of law eleven (C) challenges the use of the same operative fact as an element of aggravated murder and as an aggravating circumstance. This court has previously dealt with this issue. *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, paragraph one of the syllabus.

Propositions of law eleven (D) and (E) claim that Ohio's statutory balancing process is a mandatory scheme that does not allow the jury to extend mercy if the aggravating circumstances only slightly outweigh the mitigating factors. The balancing process of R.C. 2929.03(D)(1) has been upheld. There was little or no mitigating evidence in the record. See discussion of this issue, *infra*. *State v. Jenkins, supra*, 15 Ohio St.3d at 171–173, 15 OBR at 317–319, 473 N.E.2d at 276–277; *State v. Beuke* (1988), 38 Ohio St.3d 29, 38–39, 526 N.E.2d 274, 285; *State v. Steffen, supra*, 31 Ohio St.3d at 125, 31 OBR at 285–286, 509 N.E.2d at 396; *State v. Buell* (1986), 22 Ohio St.3d 124, 139, 22 OBR 203, 216, 489 N.E.2d 795, 809. Nor is the defense counsel precluded from begging for mercy. *State v. Rogers* (1986), 28 Ohio St.3d 427, 434, 28 OBR 480, 486, 504 N.E.2d 52, 58; *State v. Zuern, supra*, 32 Ohio St.3d at 63–64, 512 N.E.2d at 592–593.

In proposition of law eleven (F), Mills asserts that Ohio's vague standards for dismissing specifications under plea bargains unduly encourage guilty pleas, which results in the death sentence being applied in an arbitrary and capricious manner. Crim.R. 11(C)(3) does not create an improper incentive to plead guilty, and, at any rate, is not an issue in this case. See *State v. Zuern, supra*, 32 Ohio St.3d at 64, 512 N.E.2d at 593; *State v. Buell, supra*, 22 Ohio St.3d at 138, 22 OBR at 215, 489 N.E.2d at 808.

Finally, in proposition of law eleven (G), Mills challenges Ohio's standards of review in death penalty cases. The statutory standards are adequate. See, *e.g.*, *State v. Scott, supra*, 26 Ohio St.3d at 109, 26 OBR at 94, 497 N.E.2d at 69.

# V

## Sentencing Issues

Finally, Mills alleges several errors in the sentencing process. He claims that the prosecutor made improper comments during his sentencing argument

(propositions of law one, two, and four), challenges a response to a question from the jury (proposition of law five), challenges the sentencing instructions (propositions of law six and eight), and claims that the court relied on improper aggravating circumstances in its sentencing opinion (proposition of law ten). Mills further claims that the present structure of proportionality review is ineffective (propositions of law twelve and thirteen), and that he did not receive effective counsel because his attorney did not object to any of the alleged sentencing errors.

## A

### Prosecutor's Sentencing Argument

First, the prosecutor did err by referring to statutory mitigating factors not raised by the defense, when he explained why those statutory mitigating factors were not present. *State v. DePew, supra,* 38 Ohio St.3d at 289, 528 N.E.2d at 557, held that "comment is appropriate only with regard to those factors actually offered in mitigation by the defendant."

Mills's second proposition of law claims that the prosecutor's sentencing argument improperly appealed to the jury's passions and prejudices. The argument complained of was a reference to General Patton's speech in the movie, in which he assures his men that "when you get into battle and reach down and put your hand into a pile of goo that just a few moments ago was your best friend's face you'll know what to do." Likewise, the prosecutor urged that when the members of the jury remembered the circumstances of this crime and one particular photograph, they would know what to do.

This argument was clearly improper. An appeal to the jury's sense of outrage and sympathy for the victim is particularly troublesome when made after the jury has already determined the defendant's guilt, and the only remaining task is to decide his fate. See *State v. Bedford* (1988), 39 Ohio St.3d 122, 134–135, 529 N.E.2d 913, 925–926 (Wright, J., dissenting). The prosecutor's reference about imagining your best friend's face as "a pile of goo," especially in connection with his reference to remember one of the photographs, can serve only to inflame the jury. The statement certainly has no relevance to a thoughtful and careful balancing of aggravating circumstances and mitigating factors.

Because defense counsel did not object at trial, the plain error rule controls and permits reversal only to prevent a manifest miscarriage of justice. See *State v. Greer, supra;* Crim.R. 52(B); *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

No plain error exists. Any impropriety in the prosecutor's argument did not materially prejudice Mills. Mills presented little or no convincing evidence

of any mitigating factors save residual doubt. See discussion, *infra*, at Part VI. Thus, the jury could only reasonably conclude that the aggravating circumstance outweighed mitigating factors. No plain error occurred, and our independent review of the sentence will also cure the effect of any error. *State v. Landrum, supra.*

In his fourth proposition of law, Mills argues for a plain-error standard broader than that specified in *State v. Long, supra.* Mills suggests the test to be whether an error, "if uncorrected, would have a substantial adverse impact upon the integrity of and public confidence in judicial proceedings." See *In re M.D.* (1988), 38 Ohio St.3d 149, 527 N.E.2d 286. However, other than the fact that this is a death penalty case, Mills presents *no* basis to modify the plain-error rule, and we decline to do so. See *State v. Greer, supra,* 39 Ohio St.3d at 244, 530 N.E.2d at 394.

## B

### Question from the Jury

In his fifth proposition of law, Mills argues that the court's refusal to answer a jury question violated his rights. While deliberating on the sentence, the jury asked: "Is there eligibility for parole in the event the death penalty is recommended? Is there any possibility * * * that the convicted murderer could ever been [*sic*] released?" The judge then instructed the jury as he had done previously: that if they found aggravating circumstances outweighed mitigating factors beyond a reasonable doubt, they must recommend death, and otherwise, they must recommend life with the appropriate periods of incarceration. The trial court then reread the verdict forms.

Mills argues that the jury should have been told that a death sentence means no possibility of release on parole, that it means death. The trial court did not err. Release on parole, other than as specified after a minimum of twenty or thirty years in a life sentence, does not relate to the specified statutory factors and is a nebulous area which the trial court may legitimately avoid. Indeed, this question required the judge to walk the same thin line as his instructions on the effect of the jury's sentencing recommendation. As we discuss next, the judge cannot improperly suggest that the jury's sentencing recommendation is not final, but at the same time must accurately instruct them in the law. The court's response to this question was not error. The trial court handled this problem correctly and adeptly.

## C

### Sentencing Instructions

In proposition of law six, Mills argues the trial court erred by referring to twenty- or thirty-year parole eligibility without instructing that the twenty or

thirty years "must be fully served" before parole eligibility would attach. Although he never objected to this at trial, Mills now quarrels with the precise wording of the court's instruction.

The judge instructed the jury that if "the prosecution has failed to prove beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors then you must recommend a life sentence to the Court and you must further recommend either a 30–year parole eligibility or a 20–year parole eligibility." Almost immediately after that, the judge further instructed that "[i]f you recommend a life sentence the Judge must follow your recommendation not only as to the life sentence but as to the time of parole eligibility." This instruction is not error. It in no way suggests that the defendant will not serve the full twenty- or thirty-year sentence, nor were there any prosecutorial comments to that effect. See *State v. Bedford, supra,* 39 Ohio St.3d at 125, 529 N.E.2d at 917.

Appellant's eighth proposition of law argues that the trial court's sentencing instructions violated his Eighth Amendment rights by impermissibly diminishing the jury's sense of responsibility. *Caldwell v. Mississippi* (1985), 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231. Although counsel did not object to this at trial, appellant now complains that the trial court repeatedly used the word "recommendation" to describe the sentencing verdict.

Just as it is entirely improper for a prosecutor to make the argument that the jury's sentencing recommendation is not final, thereby purposefully diminishing the jury's sense of responsibility, so it is improper for a judge to make an instruction that diminishes the importance of the jury's recommendation. However, the instruction in this case certainly did not give the jury that impression. Indeed, we commend the trial judge for his instruction, specifically when he told the jury that "[s]imply put, you should recommend the appropriate sentence as though your recommendation will, in fact, be carried out." This instruction is a clear and accurate instruction on the legal effect given to the jury's sentencing verdict in a capital case. *State v. Durr* (1991), 58 Ohio St.3d 86, 93, 568 N.E.2d 674, 682; *State v. Johnson* (1989), 46 Ohio St.3d 96, 105, 545 N.E.2d 636, 645.

## D

### Sentencing Opinion

In proposition of law ten, Mills argues the trial court erred in its sentencing opinion by relying upon nonstatutory aggravating circumstances and ignoring

relevant mitigating factors. The basis of his complaint is that the trial court referred to the facts and circumstances of the offense. However, "a trial court * * * may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors." *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus. See, also, *State v. Lott, supra,* 51 Ohio St.3d at 171, 555 N.E.2d at 304–305.

In his opinion, the trial judge found no mitigating factors. Mills argues that he expressed sorrow for the victim and her family, and demonstrated intelligence in his unsworn statement. However, the weight to be given mitigating evidence is left to a sentencing authority's discretion. The judge's ultimate finding was well within the exercise of this discretion. *State v. Steffen, supra,* paragraph two of the syllabus; *State v. Stumpf, supra,* paragraph two of the syllabus. Moreover, our independent weighing process will remedy any possible error in the trial court's sentencing decision. *State v. Lott, supra; State v. Landrum, supra; State v. Spirko, supra,* 59 Ohio St.3d at 12, 570 N.E.2d at 244.

E

Proportionality

In propositions of law twelve and thirteen, Mills challenges the present structure of Ohio's proportionality review in capital cases. This proposition lacks merit. See *State v. Jenkins, supra,* 15 Ohio St.3d at 176, 15 OBR at 321, 473 N.E.2d at 304; *State v. Steffen, supra,* paragraph one of the syllabus.

F

Assistance of Counsel

In propositions of law three, seven, and nine, Mills argues that he lacked effective assistance of counsel because his attorney failed to object to the prosecutor's closing argument at sentencing and the court's sentencing instructions.

However, counsel's performance is not ineffective unless it falls "below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. To establish prejudice, "defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."

*Id.* at paragraph three of the syllabus. See *Strickland v. Washington, supra.*

Failure to object to the prosecutor's sentencing argument did not materially prejudice Mills since Mills offered no mitigation evidence other than residual doubt. Thus, Mills was not denied effective representation at trial.

As addressed above, the sentencing instructions were proper, and consequently, defense counsel's failure to object was not unreasonable.

## VI

### Independent Review

R.C. 2929.05 requires that we perform an independent review of the sentence of death, and determine whether the aggravating circumstance of the crime outweighs the mitigating factors.

The aggravating circumstance in this case is the fact that Mills was the principal offender in a murder that was committed during an aggravated robbery. R.C. 2929.04(A)(7). No other aggravating circumstances apply. See R.C. 2929.04(A)(1) through (6) and 2929.04(A)(8).

On the other hand, Mills offered little or nothing by way of mitigation. His unsworn statement and the comments of his attorney can be said to demonstrate Mills's intelligence and to raise the issue of residual doubt. R.C. 2929.04(B)(7). Residual doubt is based on the difficulty of making an accurate identification under the circumstances during which these witnesses saw the suspect. However, any residual doubt raised by the identification issues is offset by the positive identification of the car's license plate number, the matching shoeprint found on the bank counter, Bryant's testimony, and all of the other evidence in the case. No other mitigating factors were offered. See R.C. 2929.04(B)(1) through (6).

We find that the aggravating circumstance outweighs the factors offered in mitigation beyond a reasonable doubt.

## VII

### Proportionality

The final aspect of our review is to determine whether the death sentence is appropriate in this case. We have undertaken this review and so conclude, as the death sentence is neither excessive nor disproportionate. *State v. Jackson* (1991), 57 Ohio St.3d 29, 565 N.E.2d 549; *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576; *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180; *State v. Johnson, supra; State v. Clark* (1988), 38 Ohio St.3d 252, 527 N.E.2d 844; *State v. Van Hook* (1988), 39 Ohio St.3d 256, 530 N.E.2d 883;

*State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754, and cases cited therein at 395, 513 N.E.2d at 768, fn. 10.

Accordingly, appellant's convictions, except for one count each of attempted aggravated murder and felonious assault, are affirmed. The sentence of death is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

