[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION AND JUDGMENT ENTRY
This appeal comes to us from the Lucas County Court of Common Pleas. There, appellant was convicted of drug possession following his entry of a no contest plea. Appellant pled no contest after the trial court denied his motion to suppress drugs seized in a search by police during a "reverse buy" of cocaine. Because we conclude that the trial court properly denied appellant's motion to suppress, we affirm.
In early July 1998, a confidential informant told Toledo police that an individual named "Bob" was interested in purchasing a large quantity of cocaine from him. "Bob" was from Pittsburgh, Pennsylvania, but was willing to travel to Toledo to make the purchase. Three weeks later, the confidential informant informed Toledo police narcotics officers that "Bob" would be coming into town on July 30, 1998.
Pursuant to R.C. 3719.141, police applied to the Lucas County Prosecuting Attorney and were granted authority to use approximately two kilograms of powder cocaine already in police custody to make a "reverse buy." R.C. 3719.141 requires that in a "reverse buy" the purchaser must obtain the controlled substance, "* * * in the presence of the peace officers that make the sale."
On July 30, "Bob" was to meet the confidential informant at a Holiday Inn in south Toledo to make the purchase. Police planned to have the confidential informant introduce "Bob" to an undercover officer who would exchange the cocaine for money. Fifteen officers were assigned to stake out the Holiday Inn so that "Bob", the money and the cocaine would be secured.
On the afternoon of July 30, "Bob" met with the confidential informant at the Holiday Inn, but "Bob" refused to meet with or deal with anyone else. According to police testimony at the suppression hearing, "Bob" then left the Holiday Inn and went to a room he had rented in a Comfort Inn several blocks away. Telephone negotiations between "Bob" and the confidential informant ensued. Several hours later, the confidential informant went to "Bob's" room and attempted to persuade him to come to the parking lot in order to receive the drugs. "Bob" again refused, but he eventually gave the confidential informant $20,000 for the purchase of one kilogram of cocaine, which the confidential informant promised to deliver to the room.
Money in hand, the confidential informant met with police. He was, however, informed that they could not let the cocaine out of their sight. Consequently, the confidential informant went back to "Bob's" room without the drugs. He, nevertheless returned a short time later with the keys to the car that "Bob" was driving. According to the confidential informant, "Bob" had authorized him to place the drugs in the trunk of the car. Police watched as the confidential informant put the drugs in "Bob's" trunk, then went into the hotel to return the keys. Police waited. Sometime later, appellant, Robert Manning, came out of the hotel and loaded luggage into the trunk. Appellant then returned to the hotel. Then, in the company of a woman, appellant entered the passenger side of the car as the woman began to drive away. Police surrounded the car, ordered appellant and the woman out of the car, and retrieved the cocaine and several other items from the trunk of the car. Appellant and the woman, Lisa Altomare, were both charged with possession of cocaine.
Appellant pled not guilty and moved to suppress the cocaine, arguing it was the fruit of an unlawful warrantless search. When the trial court denied appellant's motion to suppress, appellant changed his plea to no contest and was found guilty as charged.
Appellant now appeals his conviction, setting forth the following single assignment of error:
 "While conducting an undercover operation pursuant to Ohio's `reverse buy' statute R.C. 3917.141, the police impermissibly created the exigent circumstance relied upon by the prosecution to justify a warrantless search of Appellant's automobile, by directing their informant to place cocaine into the trunk of appellant's car outside of his presence. This warrantless search violated his rights as guaranteed by the Fourth Amendment to the United States Constitution, and Article I Section (sic) of the Ohio Constitution."
It is well settled that the Fourth Amendment to the United States Constitution and Section 4, Article I of the Constitution of Ohio, protect a person from unreasonable searches and seizures. Warrantless searches are per se unreasonable, absent the presence of some specifically established and well defined exceptions. State v. Kessler (1978), 53 Ohio St.2d 204,207; Coolidge v. New Hampshire (1971), 403 U.S. 443, 454-455;Katz v. United States (1967), 389 U.S. 347, 357. The burden of proving an exception to the rule rests with the state. Xenia v.Wallace (1988), 37 Ohio St.3d 216, paragraph two of the syllabus.
At issue in the case is the "automobile exception" to the warrant requirement. Appellant maintains that the automobile exception originated with Carroll v. United States (1925),267 U.S. 137, a Michigan bootlegging case in which the United States Supreme Court held that law enforcement officers could conduct a warrantless search of motor vehicles for contraband, specifically in that case, whiskey and gin. See, also, State v. Mills (1992),62 Ohio St.3d 357. According to appellant, the "Carroll doctrine" encompasses two conditions necessary to justify the warrantless search of a motor vehicle: (1) probable cause that the vehicle contains contraband and (2) exigent circumstances.
Appellant concedes probable cause in this case, but argues that any exigent circumstances were the result of a police act — specifically, placing the cocaine in the trunk of his car. Citing two Ohio common pleas decisions and a number of federal dwelling search cases, appellant asserts that it is well settled that police may not create their own exigent circumstances, then rely on them to justify a search or a seizure.
Appellant, in the alternative, argues that by not making a hand to hand sale of the cocaine, police violated the "reverse buy" statute and should be penalized for that. Since the statute provides no specific sanction, appellant suggests that we impose a judicial sanction ordering suppression of the cocaine.
Regarding the "reverse buy" statute, we conclude that this legislation has little, if any, relationship to a criminal defendant. In arriving at this conclusion, we rely on two rules of statutory interpretation: the "mischief rule" and the maxim ofcassus omissus. The former involves the analysis of the apparent goal of legislation to determine what mischief the law was intended to fix. See Nutting, Elliott, and Dickerson, Legislation (4th ed. 1969), 409. The latter requires that a statute may not be extended to cover a case to which it was clearly not intended to apply. Id.
R.C. 3719.141 is codified in the same chapter of the revised code which regulates pharmacists handling controlled substances. There is only peripheral mention of a criminal defendant in the language of the law: the criminal suspect is referred to as "the purchaser" or the "intended recipient" of controlled substances. R.C. 3719.141(A)(1)(c) (iii); (2)(d)(i). The law focuses on the illicit drug itself and the procedures which must be adopted to prevent the drug from escaping the control of peace officers in a "reverse buy" situation. The language also suggests that the legislature intended to establish a bright line for the criminal culpability of the officers when performing what would otherwise be an unlawful act. Absent this statute, an officer dealing drugs for himself might seek to justify that act by claiming such a transaction as a police sting. This is the type of mischief the statute appears to seek to remedy. To suggest that the statute some how confers any right on a criminal defendant would constitute an extension of the law into an area in which it was clearly not intended to apply.
With respect to appellant's exigent circumstances argument, it should be noted that even at the outset of the "automobile exception" to the warrant requirement, the exigency, (defined in Carroll at 153 as, "* * * where it is not practicable to secure a warrant * * *") was the fact that motor vehicles, as opposed to dwellings, are readily moveable. Id. Therefore, the impracticability of obtaining a warrant (exigency) was the fact that the object of the search was a motor vehicle. This rationale was later supplemented with the Supreme Court's determination that occupants of a motor vehicle are also subject to a "reduced expectation of privacy * * *." California v. Carey
(1985), 471 U.S. 386, 393. See, also, Michigan v. Thomas (1982),458 U.S. 259, 261. More recently, the court has held, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more." Pennsylvania v. Labron (1996),518 U.S. 938, 940.
In this light, we must conclude that here the "exigency" which resulted in the warrantless search was supplied by appellant — that being the motor vehicle. Consequently, the trial court properly denied appellant's motion to suppress.
Accordingly, appellant's single assignment of error is not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
 ________________________ SHERCK, J.
 Melvin L. Resnick, J., James R. Sherck, J. Richard W. Knepper,P.J., JUDGES CONCUR.