[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App. R. 11.1(E) and Loc. R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct. R.Rep.Op. 3.
 {¶ 2} Following the trial court's denial of her motion to suppress evidence, defendant-appellant Amy Hudnall entered a plea of no contest to possession of drugs, in violation of R.C. 2925.11(A). The trial court found Hudnall guilty and sentenced her to three years' community control. Hudnall now appeals.
 {¶ 3} In her first assignment of error, Hudnall argues that the trial court erred by denying her motion to suppress because police officers had detained her without a reasonable suspicion that she was engaged in criminal activity. For the following reasons, we hold that Hudnall was not detained.
 {¶ 4} The record demonstrates that Hamilton County Sheriff's Deputies Kenneth Lee Gregory and William S. Dean were alerted by a pharmacy employee that a false prescription had just been called in. When a woman named Tiffany Mohr arrived at the pharmacy to obtain the falsely prescribed drugs, pharmacy employees called the deputies to the scene.
 {¶ 5} Mohr explained to Deputy Gregory that the confusion over the prescription was due to its being in her maiden name and not her married name. The deputies asked Mohr to sit in a chair as they verified the falsity of the prescription by contacting the physician's office. At that point, Hudnall walked up an aisle toward Mohr, sat down next to her, and began speaking with her. When Deputy Dean asked Hudnall whether the two women were together, Hudnall replied that they were not and that Mohr worked at a day-care center where she watched Hudnall's child. Deputy Dean allowed the two women to continue talking.
 {¶ 6} According to Deputy Gregory, after verifying that the prescription was false, "[w]e asked Ms. Mohr to step up. She came over to us. Ms. Hudnall came with her. We started to talk to the two of them. That's when they started to give the information they were there to pick up a prescription for Lisa Stammer. We were attempting to verify who this was. We were unable to come up with a phone number or address."
 {¶ 7} As the deputies handcuffed Mohr and walked with her to the patrol car, Hudnall followed them, asking whether there was anything that she could do. After placing Mohr in the back of the patrol car, the deputies told Hudnall that she was free to go. They also told Hudnall that if she knew any of Mohr's relatives, she should contact them and let them know where Mohr was being taken.
 {¶ 8} Deputy Gregory testified that Hudnall began talking with the deputies and told them that "she was the one, the other subject in the car. She knew they were going to get the prescription. She started to freely volunteer this information. She knew the whole act was going on. She was a willing participant in it." Hudnall further stated that "the drugs she was picking up were supposed to be taken to the Eastgate area and given to Lisa Stammer later that evening. Lisa Stammer was supposed to be selling them."
 {¶ 9} At that point, Deputy Gregory requested identification from Hudnall. Hudnall ignored his request, so Deputy Gregory asked "if she would mind if we searched her purse. She gave us permission. * * * Said, that's fine, held up her purse, handed it to me." Inside Hudnall's purse, Deputy Gregory found three large medicine vials, rubber-banded together, with no prescription labels on them. The vials contained more than 180 Zantac tablets, the same medication that Mohr had attempted to pick up from the pharmacy.
 {¶ 10} For Fourth Amendment purposes, a seizure does not occur just because an officer approaches a person and asks a few questions.[1]
Even where police officers have no basis for suspecting a person of criminal activity, they may generally ask the person questions, ask to examine identification, and request consent to search luggage, as long as they do not do so by coercive means.[2] In this case, the record demonstrates that the deputies had told Hudnall that she was free to leave the scene, but that Hudnall had lingered to speak with Mohr and the deputies, and had volunteered information about her involvement in the offense. We hold that the officers did not detain Hudnall before conducting the search of her purse. Therefore, we overrule the first assignment of error.
 {¶ 11} In her second assignment of error, Hudnall claims that the trial court erred by denying her motion to suppress evidence, because police officers had searched her purse in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution
and Section 14, Article I of the Ohio Constitution.
 {¶ 12} "A prosecutor seeking to rely upon consent to justify the lawfulness of a search has the burden of proving that the consent was voluntary. In the context of a lawful detention, voluntariness is judged by the totality of the circumstances, and it need not be proven that the defendant in fact knew that he had the right to refuse his consent."[3]
At a suppression hearing, the evaluation of the evidence and the credibility of witnesses are for the trier of fact.[4] Our review of the consent issue is limited "to a determination of whether the trial court's decision was `clearly erroneous.'"[5]
 {¶ 13} After reviewing the record, we cannot say that the trial court's decision was clearly erroneous. Because the deputies had not detained Hudnall, we hold that the trial court did not err in concluding, based upon the evidence presented, that Hudnall had voluntarily consented to the search of her purse. Therefore, we overrule the second assignment of error and affirm the judgment of the trial court.
 {¶ 14} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App. R. 27. Costs shall be taxed under App. R. 24.
Sundermann, P.J., Gorman and Winkler, JJ.
[1] See Florida v. Royer (1983), 460 U.S. 491, 497, 103 S.Ct. 1319;Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
[2] Florida v. Bostick (1991), 501 U.S. 429, 111 S.Ct. 2382; UnitedStates v. Drayton (2002), 536 U.S. 194, 122 S.Ct. 2105.
[3] State v. Robinson (Nov. 3, 2000), 1st Dist. No. C-000135, citingSchneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041.
[4] See State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing State v. Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583.
[5] State v. Hunter (Feb. 26, 1997), 1st Dist. No. C-960431.