DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury trial, found appellant, Michael E. Kott, guilty of three counts of receiving stolen property and sentenced him to serve three years of community control. For the reasons stated herein, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
"APPELLANT'S ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT DEFENDANT'S MOTION FOR ACQUITTAL (DESIGNATED MOTION FOR DIRECTED VERDICT) MADE AT THE CLOSE OF THE STATE'S
 CASE IN CHIEF AND AT THE CLOSE OF ALL OF THE EVIDENCE, AS THE STATE DID NOT PROVE ALL OF THE ELEMENTS OF EACH ALLEGED CRIME, TO WIT, THE STATE FAILED TO PROVE THAT THE SPECIFIC PROPERTY IN QUESTION WAS IN FACT STOLEN.
 "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT GRANTING THE DEFENDANT'S MOTION TO SEVER COUNT ONE OF THE INDICTMENT FROM COUNTS TWO AND THREE, IN VIOLATION OF CRIMINAL RULE 14, RELIEF FROM PREJUDICIAL JOINDER."
The following facts are relevant to this appeal. Appellant was indicted on three counts of receiving stolen property, a violation of R.C. 2913.51. Appellant, accused of receiving three stolen Bobcat loaders, was tried in April 1998. At trial, the owner of a construction equipment rental company testified that a 1997 763 Bobcat skid steer loader ("763"), which his company rented out on May 27, 1997, was stolen from the job site of the renter at the corner of Angola Road and Holland-Sylvania Road in Toledo, Ohio. The owner testified that the 763 was purchased new in April 1997 for $20,400; had a VIN or serial number of 512224048; and, when rented, had only 11.7 hours of use. On cross-examination, the owner admitted that he did not personally check that the VIN plate contained the serial number 512224048 on the day the 763 was rented.
The owner of a concrete construction business testified that a 1997 763H Bobcat skid steer loader ("763H"), was stolen from a job site at Bancroft Road and Holland-Sylvania Road in Toledo, Ohio on May 28, 1997. The owner testified that the 763H was purchased new in May 1996 for $23,115.42 and, when stolen, had approximately two hundred and sixty hours of use. The sales receipt had a VIN or serial number of 5122218647. On cross-examination, the owner admitted that he did not know for certain that the VIN plate contained the serial number 5122218647 on the day the 763H was stolen.
The owner of a masonry business testified that a 1996 853 Bobcat skid steer loader ("853"), was stolen from a job site on Henthorne Drive in Springfield Township, Ohio after June 14, 1997. The owner testified that the 853 was purchased used in May 1996 for $5,000. The 853 had a VIN number of 512819269.
A salesman who sells Bobcat skid loaders testified that each Bobcat has a VIN or serial number put on the machine at the factory for identification purposes. A visible VIN number is stamped on the serial number plate on the left upright of the machine; hidden VIN numbers are stamped in various places on the Bobcat itself; the salesman knows the place of one such hidden VIN number. He testified that appellant called him in 1997 and asked him to verify two VIN numbers; the salesman testified that during appellant's call an equipment auction yard also called him to verify the same two VIN numbers, the 763 the 763H; the salesman told the equipment auction yard where to find the hidden VIN number. The salesman testified that the hidden VIN numbers did not match the visible VIN numbers. The salesman admitted that although it was not true, the salesman told appellant that the VIN numbers were "good." He testified that he also inspected a third Bobcat, an 853, at a paving construction company in Toledo, Ohio and determined that the hidden VIN number did not match the visible VIN number on the 853.
The owner of the above mentioned paving construction company testified that on July 24, 1997, he received an 853 Bobcat, in trade from appellant for work he had done for appellant's business. He testified that he later found out that the 853 was stolen and that the 853 was taken from him.
The Toledo police detective responsible for the investigation regarding stolen Bobcats in Toledo testified that on July 30, 1997, an 853 was recovered from a paving construction company; the police records indicated that this 853 was stolen. On the same day, he contacted a sheriff in Madison County regarding an 763 and an 763H which were recovered from an equipment auction yard in London, Ohio. He checked VIN numbers in the police computer and determined that the 763 and the 763H were also listed as stolen from Toledo, Ohio.
The detective also testified about his interview with appellant. During this interview, the detective asked appellant if he knew of the Bobcats, the 853, recovered from the paving company, and the 763 and the 763H, recovered from the equipment auction yard in London, Ohio. The detective testified that appellant stated that he had purchased these Bobcats; that he used them in his business; that he determined that he no longer needed them and attempted to sell them and, when they did not sell, he sent the 763 and the 763H to an equipment auction yard in London, Ohio and gave the 853 to the paving construction company to satisfy a debt. The detective also testified that appellant stated to him that appellant had purchased the 763 and the 763H in September 1996, for cash and the 853 in March 1997, also for cash. The detective further testified that appellant presented hand written receipts for the purchases of the Bobcats from an individual named Tim Mitchell; the receipts were notarized by his sister who is a notary public. The September receipt listed the following serial numbers for the two Bobcats: 512277865 and 512247303. The March receipt listed the following serial number for the Bobcat: 512873662. The detective testified that the VIN numbers on the receipts and on the visible VIN plates did not match the secondary or hidden VIN numbers on the three Bobcats. The detective also testified that the Bobcats had not yet been stolen at the time the receipts were made out. On cross-examination, the detective admitted that the VIN numbers as listed in the receipts produced by appellant were on the three Bobcats when they were recovered. The detective testified that the switch in VIN numbers took place between the time the Bobcats were stolen and when they were recovered. At the close of the state's case, appellant renewed his motion to sever and moved for a directed verdict as to all counts. The trial court denied the motions.
Appellant's brother and sister testified on his behalf. Appellant's brother, an owner with appellant of a recycling company and landscaping company, testified that a Tim Mitchell, the individual who eventually sold them the three Bobcats, stopped by their facility and asked if they would be interested in buying a Bobcat. He and appellant indicated they would be but needed more information; the individual returned a couple of days later with the 763 and the 763H Bobcats. Appellant's brother testified that the seller wanted to be paid cash. Appellant's brother also testified that appellant called Toledo Bobcat to check on the serial plates to make sure the Bobcats had not been stolen and that there was nothing wrong with the Bobcats. Appellant's brother testified that based upon their investigation they were satisfied that the Bobcats were not stolen. Appellant's brother also testified that he and appellant paid $28,000 for two Bobcats and that their sister notarized the receipt. Appellant's brother testified that the 763 and the 763H were not satisfactory equipment for the landscaping business. Appellant's brother testified that in the spring of 1997, Tim Mitchell returned, seeking to sell an 853 Bobcat for $15,000 in cash. Appellant's brother identified a receipt dated March 18, 1997, also notarized by their sister, as well as two pictures of the Bobcat taken in May 1997. Appellant's brother also identified a canceled check for $5,000, his part of the purchase, dated April 15, 1997, which he explained was when he and his brother took possession of the Bobcat. In explaining the difference in dates between the receipt and the check, appellant's brother testified that Tim Mitchell was unable to unload the Bobcat from his flatbed truck on March 18, 1997, because of a problem with the truck and did not return until April 16, 1997, when he and appellant paid Mitchell for the third Bobcat.
Appellant's sister testified that she has been a notary public since 1995 and that she notarized a receipt for two Bobcats at her brother's business on September 14, 1996 during her lunch hour. She testified that she met Tim Mitchell and checked his driver's license, the picture on which appeared to match the person. She also identified another receipt which she notarized when her brothers bought another Bobcat in March 1997; she testified that she also saw Tim Mitchell when she notarized the second receipt.
Appellant also testified about the purchase of the two Bobcats from Tim Mitchell in 1996. Appellant testified that because Mitchell wanted to be paid in cash, appellant was concerned that the Bobcats might be stolen so he called Toledo Bobcat, gave them the VIN numbers from the serial plates and asked if they were good numbers. Appellant testified that based upon his investigation, he was satisfied that the numbers were good and he purchased the Bobcats. He testified that he wrote out the entire receipt except for Mitchell's signature and his sister's notarization. This receipt, dated September 9, 1996, listed one 763H Bobcat, ser. #512277865 and one 763 Bobcat, ser. #512247303 with a purchase price of $28,000. He confirmed his brother's testimony that the 763H and the 763 were not adequate for their business needs and that Mitchell appeared in the spring of 1997 with an 853 Bobcat to sell which had a larger capacity than the 763H and the 763. Appellant identified a check from his personal checking account for $5,000 which he wrote for his share of the purchase. A second receipt, dated March 18, 1997, listed one 853 Bobcat, ser. #512873662 with a purchase price of $15,000. Appellant testified that even the 853 was not adequate for their business needs and that he bartered the 853 to the owner of a paving construction company for work done for appellant's business. Appellant also testified that he sent the 763H and the 763 to an equipment auction yard for sale. Appellant was informed by the equipment auction yard that there was a problem with the VIN numbers. Appellant testified that he then contacted the police and met with the detective. On cross-examination, appellant admitted that the VIN numbers reflected on his receipts showed up on the three stolen Bobcats, the one he took to the paving construction company and the two he took to the equipment auction yard.
Following their deliberations, the jury returned a verdict of guilty on all three counts. Appellant filed a timely notice of appeal.
In his first assignment of error, appellant argues that the trial court erred in failing to grant defendant's motion for acquittal. This court finds not merit in this assignment of error.
In reviewing a ruling on a motion for acquittal, the reviewing court construes the evidence in a light most favorable to the state. State v. Wolfe (1988), 51 Ohio App.3d 215. As the Ohio Supreme Court stated in State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus:
 "Pursuant to Crim.R. 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
Appellant argues that the state failed to prove one of the elements of R.C. 2913.51[1], that he obtained, retained, received or otherwise disposed of the Bobcats which were reported stolen. This court disagrees.
The testimony at trial was that when the detective asked appellant if he knew about the 853 Bobcat recovered from the paving company and the 763 and the 763H Bobcats recovered from the equipment auction yard in London, Ohio, appellant stated that he had purchased these Bobcats. The detective also testified that appellant stated the following to him:
 1. that appellant had purchased the 763 and the 763H in September 1996 and the 853 in March 1997, all for cash;
 2. that he used them in his business until he determined that he no longer needed them;
 3. that when he attempted to sell them and they did not sell, he sent the 763H and the 763 to an equipment auction yard in London, Ohio and gave the 853 to a paving construction company to satisfy a debt.
The trial testimony was that the 853 recovered from a paving construction company was the 853 which appellant had given to the company; police records indicated that this 853 had been stolen. The trial testimony was also that the 763 and the 763H recovered from an equipment auction yard in London, Ohio were the same 763 and the 763H sent by appellant; the 763 and the 763H were also listed as stolen. The detective testified that the VIN numbers on the receipts appellant gave the detective and on the visible VIN plates did not match the secondary or hidden VIN numbers on the three Bobcats. Furthermore, on cross-examination, appellant admitted that the VIN numbers reflected on his receipts showed up on the three stolen Bobcats, the one he took to the paving construction company and the two he sent to the equipment auction yard.
Following our careful review of the record, we find this testimony is sufficient to withstand appellant's Crim.R. 29 motion for judgment of acquittal and that the trial court did not err in denying appellant's motion for acquittal. Accordingly, appellant's first assignment of error is found not well-taken.
Appellant asserts in his second assignment of error that the trial court erred when it overruled his motion to sever one count of the indictment from the other two counts of the indictment. Appellant argues that the circumstances surrounding the claims presented by the state in counts two and three were ostensibly the same while the circumstances surrounding the claims presented by the state in count one were different. Appellant also argues that in this case the evidence was not simple and direct and that it was not improbable that the jury could confuse the offenses and base its decision on cumulative evidence.
Pursuant to Crim.R. 8 (A), two or more offenses may be charged in the same indictment, if they "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." The Supreme Court of Ohio has held that "joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses."State v. Schaim (1992), 65 Ohio St.3d 51, 58.
Pursuant to Crim.R. 14, an accused may ask the trial court to sever multiple counts in an indictment. To prevail on a claim that the trial court erred by denying his motion to sever, a defendant must affirmatively demonstrate: "(1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." Id.
at 59, citing State v. Torres (1981), 66 Ohio St.2d 340, syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In State v. Lott (1990), 51 Ohio St.3d 160, 163, the Ohio Supreme Court, in responding to a claim of prejudice in denying a motion to sever, stated:
 "A prosecutor can use two methods to negate such claims of prejudice. Under the first method, the `other acts' test, the state argues that it could have introduced evidence of the 1983 crimes under the `other acts' portion of Evid.R. 404 (B), if the 1983 and 1986 offenses had been severed for trial. (Citation omitted.) Under the second method, the `joinder' test, the state is not required to meet the stricter `other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct. (Citations omitted.) Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the non-admissibility of evidence of these crimes as `other acts' under Evid.R. 404 (B). (Citations omitted.)"
See, also, State v. Mills (1992), 62 Ohio St.3d 357, 362; State v.Hamblin (1988), 37 Ohio St.3d 153, 159. In this case, the evidence of all three crimes is both simple and direct. As stated by the court in State v. Hamblin, 37 Ohio St.3d at 159: "Moreover, the jury is capable of segregating the proof of multiple charges when, as in the present case, the evidence of each crime is uncomplicated. (Citation omitted.)" This court concludes that the trial court did not abuse its discretion in denying appellant's motion to sever.
Accordingly, appellant's second assignment of error is found not well-taken.
On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
JUDGMENT AFFIRMED.
 _______________________________ Peter M. Handwork, P.J.
 _______________________________ James R. Sherck, J.
 _______________________________ Richard W. Knepper, J.
CONCUR.
[1] R.C. 2913.51 (A) provides:
 "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."