OPINION
The state of Ohio ("the state") appeals from the judgment of the Lake County Court of Common Pleas. Appellee, Merle A. Ford ("Ford"), had an outstanding warrant and was arrested after being identified during a routine traffic stop. In a search incident to this arrest, cocaine was found in his wallet. Ford was charged with felony possession. Ford filed a motion to suppress, which the trial court granted.
Ford was the front seat passenger in a car that was stopped for speeding. The legality of the initial stop is not at issue. It was 12:15 p.m. in the afternoon. After stopping the car for speeding, Officer Negrea approached the vehicle. As he approached, the officer noticed that Ford was crouching forward and moving around. As he began speaking to the driver, the officer told Ford to sit still and to keep his hands where the officer could see them. There was no evidence that the occupants of the vehicle were under the influence of drugs or alcohol. Upon obtaining identifying information from the driver, the officer returned to his vehicle and initiated a LEADS check on the driver. While he was awaiting this information, he observed Ford fidgeting and moving around again. The officer suspected that Ford was either trying to reach or to conceal a weapon or contraband. The officer approached the vehicle again, this time on the passenger side, for the purpose of finding out what "he was doing."
The officer opened the passenger door and asked, "what are you doing? I told you to sit still." The officer observed the areas in plain view, but did not see a weapon or contraband. Ford stated that he had dropped his ring and was looking for it. The officer testified he asked Ford to get out of the car "so I [could] talk to him." Ford got out of the car. Ford had a ring, which he proceeded to slip off his finger and drop on the ground. Ford stated this was the ring he had dropped. Once Ford was out of the car, the officer looked him over, but did not conduct a pat down search. The officer looked into the passenger side of the car, but made no attempt to search that area. The officer then asked Ford for some identification. Ford stated he had none. However, upon being asked by the officer, Ford was able to give his name, his birth date, and his social security number. After this brief questioning and observation, Ford was permitted to return to his seat in the car.
The trial court noted that the officer was not substantially concerned for his safety, rather, he was more curious about Ford's suspicious behavior. While the officer had initially considered it possible that Ford was trying to either obtain or conceal a weapon, the court noted he did not take actions consistent with real concern for his safety, such as request a back-up, have Ford remain outside of the vehicle, or place him in the back of the cruiser.
The court concluded that, under the circumstances, a reasonable person would not have felt free to decline to answer the officer's questions, and that this was not a consensual encounter. The trial court found that when the officer detained Ford, he was legally "seized." The court stated, "[w]hile this is a close call, the court finds that the officer did not have specific and articulable facts upon which to seize Ford." The trial court granted the motion to suppress. The state timely filed this appeal, assigning the following error:
 "The trial court erred as a matter of law by granting defendant-appellee's motion to suppress."
 The state argues that the officer's request that Ford exit the vehicle and identify himself was not a detention beyond constitutional bounds and, therefore, Ford was not subjected to an unreasonable search and seizure. The state also argues that the trial court erred in ignoring the effect of the warrant when assessing the constitutionality of the officer's seizure of Ford.
In evaluating an appeal of a motion to suppress evidence, our standard of review is bifurcated with respect to factual and legal issues. We review "the trial court's findings of facts * * * only for clear error and with due weight given to inferences the trial judge drew from the facts." State v. Searls (1997), 118 Ohio App.3d 739, 741, citing Statev. Mills (1992), 62 Ohio St.3d 357, 366. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." Id. To the extent an appeal is directed at a trial court's findings of fact, we review these findings to determine only whether the findings were against the manifest weight of the evidence.Id. In contrast, an appellate court reviews the trial court's application of law to those facts de novo. Id. An appellate court "must independently determine whether the facts meet the appropriate legal standard." Id.
The law regarding reasonable suspicion is well established. In evaluating the propriety of an investigative stop, a reviewing court must consider the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews
(1991), 57 Ohio St.3d 86, 87-88. An officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [seizing] a person. Terryv. Ohio (1968), 392 U.S. 1, 21.
In this fact pattern, there are two discernable points in time to which the reasonable suspicion analysis might be applied. The first is when the observations of the officer resulted in the officer pulling Ford out of the vehicle and conducting the inquiry that occurred at the side of the car. The second is the time frame immediately after that portion of the investigation was concluded, when the officer gave Ford permission to get back into the car, yet detained him to continue an investigation based upon his identity.
While the trial court's judgment entry made no such distinction, the record provides the basis that reasonable suspicion existed to conduct the initial investigation at the side of the car, but that once this suspicion was dispelled and Ford was permitted to return to the car, reasonable and objective grounds for further detention and investigation no longer existed. Under this analysis, the question is whether the detention and further investigation that occurred after he was permitted to return to the car was constitutionally valid.
In State v. Chatton (1984), 11 Ohio St.3d 59, a police officer initiated a traffic stop of an individual based upon reasonable suspicion that the car was not displaying a rear license plate. There was no plate on the rear bumper. Upon approaching the vehicle after it was stopped, the officer observed that the individual did have a temporary tag displayed in his rear windshield. At that point, it was evident to the officer that the driver was not committing the violation for which the vehicle was stopped. Nevertheless, the officer continued with the detention and investigation into the driver's identity, which ultimately led to the driver's arrest for driving on a suspended driver's license.
The Supreme Court of Ohio concluded that "once the police officer herein observed the temporary tags, appellee could no longer be reasonably suspected of operating an unlicensed or unregistered vehicle."Id. at 63. The court further stated that "because the police officer no longer maintained a reasonable suspicion that appellee's vehicle was not properly licensed or registered, to further detain appellee and demand that he produce his driver's license is akin to the random detentions struck down by the United States Supreme Court in Delaware v. Prouse
[(1979), 440 U.S. 648]." Id. Once the officer's reasonable suspicion for initiating the stop was dispelled, the individual "should have been free to continue on his way without having to produce his driver's license."Id. The Chatton court noted the United States Supreme Court's holding inBrown v. Texas (1979), 443 U.S. 47, wherein the court concluded that the fact an individual merely looks suspicious is not a sufficient justification to detain the individual and demand identification. Id. at 61.
In Chatton, the court held that, under the facts of that case, once the reasonable suspicion for the stop was dispelled, "the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable." Id. at 63. "Absent any additional articulable facts arising after the stop is made, the police officer must tailor his detention of the driver to the original purpose of the stop." State v.Robinette (1995), 73 Ohio St.3d 650, 652, citing Chatton at 63.Robinette was subsequently modified on remand from the United States Supreme Court. It held, in part, that:
 "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. (State v. Robinette
(1995), 73 Ohio St.3d 650, paragraph one of the syllabus, modified.)" State v. Robinette (1997), 80 Ohio St.3d 234, paragraph one of the syllabus.
 We find the officer did have reasonable suspicion, based on articulable facts, to detain and conduct his initial investigation of Ford. When he first approached the vehicle, Ford was making what could be characterized as furtive movements. He was asked to stop. Upon returning to his vehicle, the officer again saw Ford making the same type of movements. He proceeded to investigate. An officer may lawfully order the passenger of a stopped vehicle to exit the vehicle pending the completion of the traffic stop. Maryland V. Wilson (1977), 519 U.S. 408. However, we conclude that upon completion of the investigation by the side of the car, the officer's actions indicated he no longer had an objective reasonable suspicion of Ford. It was 12:15 p.m. in the afternoon. There was no indicia of intoxication or criminal activity. The officer looked inside of the car and, admittedly, did not see any indicia of criminal activity. He did not attempt to further search the area in which Ford had been sitting. The officer's own actions signaled that reasonable suspicion to detain Ford and to conduct further investigation no longer existed.
The question then becomes whether, in the absence of reasonable suspicion, peace officers may detain and conduct investigations of passengers who happen to be in a car that has been lawfully stopped. The answer is "no." Clearly, the police could not establish a check point in a public place, such as a shopping mall, and require people to supply their identities so that computerized warrant searches could be run. The United States Supreme Court has "condemned the use of random stops of vehicles to check the validity of the operator's driver's license and the vehicle's registration." Chatton, 11 Ohio St.3d at 61, citing Delawarev. Prouse. From the perspective of the passenger in a lawfully stopped automobile, being seized for the purpose of an identity check is hardly any less random than being seized in a shopping mall, or driving a car that is randomly stopped.
We agree with the trial court's conclusion that the encounter at issue in this case was not consensual. Once objective reasonable suspicion of criminal activity was dispelled, there was no constitutional basis for a continued investigation. This case is analogous to Chatton. Once the initial limited investigation was concluded, Ford should have been "free to go." We, therefore, affirm the judgment of the trial court for the reason set forth above.
FORD, J., CHRISTLEY, J., concur.