[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court on appeal from the Fulton County Court of Common Pleas' May 7, 2002 judgment entry of sentence of defendant-appellant Thomas Edward Craft.
{¶ 2} On July 8, 1999, appellant was indicted for aggravated murder, a violation of R.C. 2903.01(A); murder, a violation of R.C.2903.02(A); possession of criminal tools, a violation of R.C. 2923.24(A); and, gross abuse of a corpse, a violation of R.C. 2927.01(B). On September 7, and November 9, 1999, appellant entered no contest pleas to, respectively, gross abuse of a corpse and possession of criminal tools. On March 3, 2000, appellant entered a plea pursuant to North Carolina v. Alford (1970), 400 U.S. 25, to the lesser offense of voluntary manslaughter.
{¶ 3} The sentencing hearing was held on April 19, 2000. The state proffered testimony attempting to establish that appellant intentionally killed his wife, dismembered her body and disposed of her body parts at various locations in the state of Michigan in order to avoid detection. The defense, conversely, attempted to show that appellant's wife committed suicide by stabbing herself in the chest and that appellant then dismembered and disposed of the body so his young children would not know that their mother killed herself.
{¶ 4} Thereafter, appellant was sentenced to the maximum term of ten years in prison for voluntary manslaughter, one year in prison for gross abuse of a corpse, and one year in prison for possession of criminal tools. The sentences were ordered to be served consecutively.
{¶ 5} Following his sentence, appellant filed an appeal with this court arguing that his sentences were contrary law. See State v. Craft (April. 27, 2001), 6th Dist. No. F-00-013 (hereafter referred to as "Craft I".) In Craft I, this court held, inter alia, that the trial court erroneously failed to state its reasons, as required under R.C. 2929.19, supporting appellant's maximum, consecutive sentences. Thus, we vacated appellant's sentence and remanded the matter for resentencing.
{¶ 6} Appellant was resentenced on May 7, 2002, following a sentencing hearing on March 22, 2002. Appellant was again sentenced to maximum, consecutive sentences and this appeal followed.
{¶ 7} Appellant now raises the following three assignments of error:
{¶ 8} "Assignment of error No. 1
{¶ 9} "The defendant's maximum, consecutive sentences are illegal under Ohio's statutory sentencing laws and violate both federal and state constitutional due process protections.
{¶ 10} "A. The trial court erred in refusing to accept the elements of the most serious charge of which the defendant was convicted when imposing his sentences.
{¶ 11} "B. The trial court's refusal to accept the elements of the crime for which Tom Craft was convicted constitutes a deprivation of his constitutional rights to due process.
{¶ 12} "Assignment of error No. 2
{¶ 13} "The trial court erred to the prejudice of the defendant when it `created' a finding not based upon any evidence in the record.
{¶ 14} "Assignment of error No. 3
{¶ 15} "The record in this case fails to support any `reasons' the trial court relied upon in imposing maximum, consecutive sentences."
{¶ 16} As we set forth in Craft I, appellant's basis for an appeal as of right is provided in R.C. 2953.08(A). The standard of review applicable to appellant's assignments of error is set out in R.C.2953.08(G)(2) which provides:
{¶ 17} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
{¶ 18} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
{¶ 19} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
{¶ 20} "(b) That the sentence is otherwise contrary to law."
{¶ 21} As we further stated in Craft I, R.C. 2929.14(C) addresses maximum sentences as follows:
{¶ 22} "Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
{¶ 23} In determining whether or not the offender committed the "worst form of the offense," the trial court is guided by a nonexhaustive list of factors found in R.C. 2929.12(B) which states:
{¶ 24} "The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
{¶ 25} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
{¶ 26} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
{¶ 27} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
{¶ 28} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
{¶ 29} "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
{¶ 30} "(6) The offender's relationship with the victim facilitated the offense.
{¶ 31} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.
{¶ 32} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
{¶ 33} "(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children."
{¶ 34} In determining whether or not the offender exhibits a great likelihood of committing future crimes, the trial court is guided by R.C. 2929.12(D) which states:
{¶ 35} "[T]he sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:
{¶ 36} "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28
or any other provision of the Revised Code for an earlier offense.
{¶ 37} "(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has a history of criminal convictions.
{¶ 38} "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
{¶ 39} "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
{¶ 40} "(5) The offender shows no genuine remorse for the offense."
{¶ 41} In addition to the necessary findings under R.C. 2929.14(C), prior to sentencing an offender to consecutive sentences the court must comply with R.C. 2929.14(E) which provides:
{¶ 42} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
{¶ 43} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
{¶ 44} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
{¶ 45} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
{¶ 46} In appellant's first assignment of error he first argues that the maximum, consecutive sentences he was ordered to serve are contrary to law because the trial court failed to accept the elements of the most serious charge for which appellant was convicted, voluntary manslaughter.[1] Particularly, appellant points to the trial court's statement during sentencing that the court was "not persuaded under the circumstances that any credible evidence supports a finding that the victim facilitated or induced the offense." The state, conversely, asserts that the trial court, in considering the factors under R.C.2929.12, properly exercised its discretion in determining the weight that such factors were to be given.
{¶ 47} As stated above, in determining an appropriate sentence, a trial court is required to consider the sentencing factors enumerated in R.C. 2929.12. At the March 22, 2002 sentencing hearing, as to the more serious factors under R.C. 2929.12(B), the trial court noted that:
{¶ 48} "[O]bviously physical and mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical and mental condition or age of the victim. There's no doubt he killed her, that is a given under the plea to the Voluntary Manslaughter, [sic] would find that the factor applies insofar as her psychological problems did impact the offense. The victim obviously suffered serious psychological harm as a result of the offense up to and obviously including death, and I am persuaded that there was abuse and physical harm inflicted upon her prior to her death based upon the forensic findings. There is a — the relationship of the offender facilitated the offense. Remaining factors appear to be inapplicable."
{¶ 49} As to the less serious factors, R.C. 2929.12(C), the court indicated the following:
{¶ 50} "I'm not persuaded under the circumstances that any credible evidence supports a finding that the victim facilitated or induced the offense. I realize that the plea bargain includes an element of provocation, and to the extent that any of that existed, that is already taken into account when the plea is to Voluntary Manslaughter as opposed in other offense [sic], so I don't find that that factor has weight."
{¶ 51} In finding that appellant committed the worst form of the offense, R.C. 2929.14(C), the court further explained that under the facts of the case, one could not "fairly evaluate the seriousness of the killing * * * by virtue of the plea agreement characterized as a voluntary manslaughter, and ignore the subsequent dismemberment and efforts to dispose of the body." The court found it "completely implausible that [appellant] was going to dismember and dispose of [the] body to protect the feelings of his children * * *."
{¶ 52} It is axiomatic that a trial court is afforded broad discretion in determining the weight to be given to a particular statutory sentencing factor. State v. Fox (1994), 69 Ohio St.3d 183,193, citing State v. Mills (1992), 62 Ohio St.3d 357, 376. Further, "`a trial court * * * may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors.'" Mills, quoting State v. Stumpf (1987), 32 Ohio St.3d 95, paragraph one of the syllabus.
{¶ 53} Upon review of the sentencing hearing and statutory and case law, we find that the trial court did not abuse its discretion in giving the mitigating factor of provocation little or no weight. The element of provocation is inherent in the crime of voluntary manslaughter and, thus, the fact that appellant was provoked does not necessitate that his conduct was less serious than that of others convicted of voluntary manslaughter.
{¶ 54} In the same vein, appellant also argues that the trial court's refusal to accept the elements of the crime for which he was convicted, voluntary manslaughter, constitutes a deprivation of his constitutional right to due process. We disagree. As stated above, the trial court has discretion in determining how much weight to afford statutory factors. Unlike the cases cited by appellant including, inter alia, State v. Wells (1999), 133 Ohio App.3d 392[2] and State v. McDaniel (2001), 141 Ohio App.3d 487,[3] the record does not support appellant's assertion that the court impermissibly considered the greater offenses of murder or aggravated murder in sentencing appellant. Accordingly, we find that appellant's first assignment of error is not well-taken.
{¶ 55} In appellant's second assignment of error he contends that appellant was prejudiced by the trial court's "creation" of a finding not supported by the record. Appellant argues that the court's use of the word "sociopath" in describing him was impermissible because it was not based on a clinical diagnosis and that the trial court's subsequent conclusion that appellant is likely to reoffend is not supported by the record.
{¶ 56} During the March 22, 2002 hearing, the court stated:
{¶ 57} "And it is frankly completely implausible that he was going to dismember and dispose of this body to protect the feelings of his children, or to protect the feelings of her family. I view that as a creative attempt of a sociopath to escape criminal responsibility simply because it is just so unbelievable. I don't think that any reasonable person could accept that given all the facts and circumstances involved with this killing, again the dismemberment, and the disposable [sic] of the body.
{¶ 58} "Concurrent terms — I don't know of a case where more clearly concurrent terms would demean the seriousness of the offense. And I believe consecutive terms are necessary to punish the horrendous crimes, but also to protect the public from future criminality of this Defendant. I will acknowledge as pointed out by counsel, that he appears to have no prior record. However, the circumstances of this crime taken as a whole, strongly suggests that he is a very intelligent sociopath, who I believe based on the circumstances of this and his absolute lack of any genuine remorse, is at risk to commit other offenses any time that he would be able to do so."
{¶ 59} As stated above, a trial court had broad discretion in the weight given to sentencing factors. Fox, 69 Ohio St.3d at 193. In imposing consecutive sentences, the court concluded that consecutive terms were necessary due to the circumstances of the crime and were not disproportionate to the seriousness of appellant's conduct. While acknowledging that appellant had no prior criminal record, the court found that based upon the nature of the crime and appellant's lack of any true remorse, he was at risk of future criminality. We believe that the court's reference to the term "sociopath" was not an attempt at a clinical diagnosis; rather, the court was expressing its disbelief of the reason given by appellant for the dismemberment and disposal of the body and the court's belief that appellant displayed no true remorse for the crime. Accordingly, we find that the court made the necessary statutory findings and the court's reasons for imposing consecutive sentences were supported by the record. Accordingly, appellant's second assignment of error is not well-taken.
{¶ 60} In appellant's third assignment of error, appellant asserts that the record fails to support the "reasons" relied upon by the court in imposing maximum, consecutive sentences as required under R.C.2929.19(B)(2)(a)(c) and (e).
{¶ 61} Again, under the "more serious" factors of R.C. 2929.12(B), the court found that the physical or mental injury of the victim was exacerbated because of the physical or mental condition of the victim, the victim suffered serious physical, psychological, or economic harm, and the offender's relationship with the victim facilitated the offense. As to these factors, appellant contends that because death is a "prerequisite" in a voluntary manslaughter case, the findings of physical or mental injury cannot be considered factors making appellant's conduct more serious. We disagree.
{¶ 62} In State v. Brittian, 10th Dist. No. 01AP-621, 2002-Ohio-203, cited by the state, the court indicated that while manslaughter necessarily results in serious harm to its victim, such harm may also include the suffering the victim endures prior to death. In the present case, there was ample testimony presented at the April 19, 2000 sentencing hearing to support the trial court's finding that Mrs. Craft suffered serious physical harm prior to her death. It is also undisputed that appellant's relationship to Mrs. Craft facilitated the offense.
{¶ 63} The trial court next found that none of the mitigating factors under R.C. 2929.12(C) were applicable. Further, in imposing maximum sentences, the trial court concluded that appellant committed the worst form of the offense, R.C. 2929.14(C).
{¶ 64} After careful review of the sentencing hearing we find that the court clearly stated its reasons for imposing maximum, consecutive sentences (portions of which are quoted above.) The court concluded that Mrs. Craft suffered serious physical and psychological harm leading up to her death. The court also relied on the extraordinary facts and circumstances surrounding Mrs. Craft's death.
{¶ 65} Based on the court's thorough consideration of the requisite statutory factors and its application of the facts to said factors, we find that the trial court properly set forth its reasons for imposing maximum, consecutive sentences. Appellant's third assignment of error is not well-taken.
{¶ 66} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Fulton County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J., Richard W. Knepper, J., Mark L. Pietrykowski, J., CONCUR.
[1] The offense of voluntary manslaughter, R.C. 2903.03, is defined as follows:
"No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."
[2] In Wells, the trial court stated: "`This court believes that in allowing a plea to voluntary manslaughter, mercy has been accorded the defendant and he has avoided a life term.'" Id. at 394-395.
[3] In McDaniel, the sentencing court improperly based its finding that the defendant committed the worst form of the offense on facts unrelated to the offense as it was charged. Id. at 492.