[Cite as *State v. Harrison*, 2022-Ohio-741.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT,               CASE NO. 8-21-31

    v.

KANDALE L. HARRISON,             O P I N I O N

    DEFENDANT-APPELLEE.

---

**Appeal from Logan County Common Pleas Court**
**Trial Court No. CR 20 07 0162**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  March 14, 2022**

---

APPEARANCES:

    *Eric C. Stewart* **for Appellant**

    *Kenneth J. Rexford*  **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-Appellant, State of Ohio ("State"), brings this appeal from the September 21, 2021 judgment of the Logan County Common Pleas Court granting in part and denying in part Defendant-Appellee, Kandale L. Harrison's motion to suppress. On appeal, the State argues that the trial court should not have suppressed the evidence found during an Adult Parole Authority Officer's search of Harrison's vehicle.

*Background*

{¶2} On July 14, 2020, Harrison was indicted on four criminal charges stemming from two separate incidents on May 27, 2020 and June 13, 2020. Based on the first incident, Harrison was indicted on Counts One and Two: (1) possession of fentanyl-related compound in violation of R.C. 2925.11, a third-degree felony, and (2) possession of cocaine in violation of R.C. 2925.11, a fifth-degree felony. Based on the second incident, Harrison was indicted on Counts Three and Four: (3) possession of cocaine in violation of R.C. 2925.11, a fifth-degree felony, and (4) illegal conveyance of drugs of abuse onto grounds of a specified governmental facility in violation of R.C. 2921.36(A)(2), a third-degree felony.

{¶3} After a not guilty plea, Harrison filed a motion to suppress. In his motion, Harrison sought to suppress evidence obtained on June 13, 2020 as well, but the sole focus on appeal is the warrantless search of the vehicle Harrison was observed operating on May

27, 2020. Harrison's new counsel thereafter filed supplemental briefing on the motion. The State filed a memorandum contra to the motion to suppress.

{¶4} A hearing was held on the suppression motion on August 25, 2021. Testimony at Harrison's suppression hearing reflects that he was on post release control in May 2020. Condition No. 7 of the conditions of Harrison's post release control supervision provided: "I agree to the warrantless search of my person, motor vehicle, place of residence, personal property, or property that I have been given permission to use, by my supervising officer or other authorized personnel of the Ohio Department of Rehabilitation and Correction at any time." (State's Exhibit 1).

{¶5} On May 27, 2020, while on patrol, Bellefontaine Police Officer Hostetler testified that he observed Harrison operating a vehicle. Officer Hostetler recognized him from a prior drug trafficking investigation. A license check revealed that Harrison was under an "OVI" suspension. However, due to traffic reasons, Officer Hostetler was unable to catch up with Harrison to initiate a traffic stop at that time. Soon afterward, while patrolling, Office Hostetler encountered another vehicle he was familiar with as involved in prior drug activity, so then he began following that vehicle into the Highland Hills Plaza parking lot. As Officer Hostetler entered the plaza parking lot, he observed Harrison's vehicle. He further observed both Harrison get out of his vehicle and a male from the other vehicle, who he was familiar with for selling and receiving large amounts of marijuana, and they were both walking toward one another. According to Officer Hostetler, once they

observed the Officer's patrol car, they both then stopped walking toward one another, attempted to enter the Dollar General Store (which was locked), and then entered the Community Market grocery store. Because Officer Hostetler had knowledge that Harrison was on post release control, he then called Adult Parole Authority ("APA") Officer McKirahan in Bellefontaine and explained to him "that I observed [Harrison] driving under suspension. I also explained to Officer McKirahan the behavior that I observed in the parking lot between both males[.]" (Tr. at 39).

{¶6} APA Officer McKirahan testified that he received a call from the Bellefontaine Police Department, on May 27, about Harrison. "It was in regards to what appeared to be suspicious drug activity." *Id.* at 63. When asked whether he was told anything else about Harrison, APA Officer McKirahan replied, "That he drove there in a vehicle, and I'm pretty sure his license was suspended too." *Id.* at 64. At that time, APA Officer McKirahan told the Bellefontaine Police Officer "that he was good to [arrest Harrison] on a [parole violation] due to him being in the city in what appeared to be a violation of rule standard condition number one, which is no illegal drug activity or anything of that." *Id.* at 65.

{¶7} After exiting the store, Harrison did not return to his vehicle. Instead, he walked around the store to the back of the plaza shopping center. Officer Hostetler made contact with Harrison and said Harrison became argumentative when he arrested him for an alleged "parole violation." Harrison was placed in the back seat of Officer Hostetler's partner's patrol car. APA Officer McKirahan arrived. Harrison denied he owned the

vehicle and refused to turn over the key fob. Law enforcement attempted to obtain the key fob, but they were not able to recover it from Harrison at the scene. After Harrison was transported to the jail, law enforcement did recover the key fob. The fob was taken back to the plaza center parking lot where Officer McKirahan subsequently conducted a search of the vehicle and found a digital scale, marijuana, cocaine, and fentanyl.

{¶8} Following this incident, on June 8, APA Officer Burns issued Harrison a sanction receipt. The receipt stated, in part, "[y]ou also failed to comply with [a] direct order from your Supervising officer [i.e., APA Officer Burns], to STAY OUT of City of Bellefontaine while on supervision." (State's Exhibit 2). The sanction receipt also stated: "You are ordered to STAY OUT of the [City] of Bellefontaine while on supervision, only allowed to be in the City of Belle[]fontaine to attend Court Hearings as scheduled." *Id.*

{¶9} Based on the suppression-hearing testimony, the trial court granted in part and denied in part Harrison's motion to suppress. His motion was granted as to Counts One and Two but denied as to Counts Three and Four. The trial court granted Harrison's motion as to Counts One and Two for the reasons that APA Officer McKirahan did not have reasonable grounds to conduct the search of Harrison's vehicle pursuant to the warrantless search Condition No. 7 of his post release control supervision and that the search was not based on probable cause. As a consequence, the trial court suppressed all evidence resulting from the search on May 27, 2020.

{¶10} The State now appeals, asserting the following assignment of error for our review.

**The trial court erred in suppressing the State's evidence found during an APA Officer's search of the Defendant's vehicle.**

{¶11} In its assignment of error, the State argues that the trial court erred by granting Harrison's motion to suppress the State's evidence found during APA Officer McKirahan's search of Harrison's vehicle.

*Standard of Review*

{¶12} A suppression motion is a device used to eliminate evidence from a criminal trial that has been secured illegally in violation of the Fourth, Fifth, or Sixth Amendment. *State v. French*, 72 Ohio St.3d 446, 449, 1995-Ohio-32. Appellate review of a decision on a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). When reviewing a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is *de novo*, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*Argument and Analysis*

{¶13} In support of its assignment of error, the State argues that the trial court failed to consider the adult parole authority's statutory authority to analyze the validity of the APA Officer's verbal arrest order of a person suspected of violating post release control conditions and his subsequent warrantless post release control search.

{¶14} The State first argues APA Officer McKirahan's verbal arrest order was justified pursuant to R.C. 2967.15 because he had reasonable cause to believe there were violations of the Conditions of Supervision based on facts relayed that Harrison was observed operating a vehicle with a suspended license in Bellefontaine and that he was possibly involved in suspected drug activity.

{¶15} The APA has statutory authority to arrest or have a police officer arrest a person alleged to be in violation of his post release control, R.C. 2967.15. Specifically, Section (A) states that:

> **If an adult parole authority field officer has reasonable cause to believe that a person * * * who is under the supervision of the adult parole authority has violated or is violating the condition of a conditional pardon, parole, other form of authorized release, transitional control, or post-release control * * * or any other term or condition of the person's conditional pardon, parole, other form of authorized release, transitional control, or post-release control, the field officer may arrest the person without a warrant or order a peace officer to arrest the person without a warrant.**

R.C. 2967.15(A).

{¶16} Under the circumstances of the instant case, there was sufficient evidence that Officer Hostetler lawfully arrested Harrison pursuant to APA Officer McKirahan's order. According to Officer Hostetler, he had informed APA Officer McKirahan of the fact that he observed Harrison driving under suspension in Bellefontaine and that he had also observed Harrison appear to rendezvous and begin to engage with a person known by Officer Hostetler to have been involved in prior drug activity. The driving under suspension alone was a clear violation of Harrison's first condition of supervision which required him to "obey federal, state and local laws and ordinances, including those related to illegal drug use." (State's Exhibit 1). APA Officer McKirahan then ordered the arrest, which was supported by all of the foregoing information known to him at the time.

{¶17} While we do not rely specifically upon the fact of Harrison being in "the city," i.e. Bellefontaine as a conclusive violation of conditions, because, as noted by the trial court, that condition had not yet been reduced to a written condition, we do find that this circumstance was at least some additional evidence to establish reasonable cause to suspect that Harrison was not complying with the conditions of his post release control. As presented by his supervising APA officer's testimony, Harrison was given a prior verbal order by APA Officer Burns to stay out of the city of Bellefontaine while on supervision because Harrison had previously claimed that he was "getting stopped or harassed" every time he goes there. (Tr. at 17). The second condition of supervision required Harrison to "follow all orders given to [him] by [his] supervising officer." (State's Exhibit 1). As such

-8-

the order to arrest by Officer McKirahan was consistent with good faith reliance on APA Officer Burns' instructions to Harrison.

{¶18} In any event, based upon the statutory authority of R.C. 2967.15 and the totality of the circumstances in this case, there was reasonable cause for APA Officer McKirahan to believe Harrison was violating his "Conditions of Supervision" while under post release control and thereby order the detention and arrest.

{¶19} The second suppression issue is whether APA Officer McKirahan properly initiated the subsequent search of Harrison's vehicle. The State argues that the search of his vehicle was supported by reasonable grounds pursuant to R.C. 2967.131(C) and the consent to search provisions of Condition No. 7 of the terms and conditions of post release control set forth earlier.

{¶20} The statutory authority afforded to APA officers to conduct warrantless searches of offenders released on post release control supervision is found in R.C. 2967.131(C), which states that "authorized field officers of the authority * * * may search, * * * without a warrant," a felon's person, residence, vehicle, or other property if they "have reasonable grounds to believe" that he "is not complying with the terms and conditions" of his post release control. R.C. 2967.131(C). This standard is further supported in Condition 7 of the terms and conditions of Harrison's post release control as set forth earlier, providing for a blanket consent to conduct a warrantless search of any motor vehicle he operated at any time.

{¶21} Officer Hostetler testified that he detained Harrison until APA Officer McKirahan arrived, which was about eleven minutes later according to his police cruiser video. Upon his arrival, APA Officer McKirahan and Harrison had an argumentative conversation about the arrest and when asked about the vehicle, Harrison claimed that he did not drive there, but he had the key fob on him. Officer McKirahan asked him for the key fob to the vehicle and as the officers attempted to retrieve the key fob, the car alarm for the vehicle that was under suspicion started going off, which vehicle was registered to Harrison's mother. In his testimony, Officer McKirahan described Harrison's behavior, stating that "his behavior was conducive to what I believed of trying to suppress us from finding something. So, with his behavior and how he was acting and just his body language and pushing and trying to get us to get away from the vehicle gave me reasonable grounds to believe that he was hiding something in that car." (Tr. at 67).

{¶22} We reiterate, the standard for evaluating the search in this instance is established in R.C. 2967.131(C), to wit: "reasonable grounds to believe [Harrison] is not complying with the terms and conditions of his post release control" as opposed to the more traditional standard of probable cause to believe that the vehicle contained drugs, exclusively relied upon by the trial court in its decision to suppress. As such, it is our conclusion that the personal interaction and conversation with Harrison at the scene, coupled with the totality of circumstances known to Officer McKirahan up to this point, including the driving under suspension, apparent effort to rendezvous with and approach a

known drug dealer, and the evasive behavior in the parking lot prior to his detention by Officer Hostetler, constituted sufficient grounds to support the search of the car pursuant to the governing standards of R.C. 2967.131(C) and Condition 7 of the terms and conditions of post release control.

{¶23} In our judgment, and given the constant communication between Officer Hostetler and Officer McKirahan leading up to the arrest and search, the time delay of approximately eleven minutes in Officer McKirahan arriving is not significant in this case. Further, it is evident from APA Officer McKirahan's testimony that he did not rely solely on Officer Hostetler's observations but also relied on his own observations and interaction with Harrison prior to searching the vehicle. Officer McKirahan's conversation with Harrison as described above, is alone objectively consistent with reasonable grounds to believe that there was something in the vehicle which would place Harrison in violation of his post release control, and that Harrison knew it.

{¶24} For all of the foregoing reasons, it is our conclusion that the trial court improperly granted the motion to suppress as to Counts One and Two and the State's assignment of error is sustained.

{¶25} We therefore reverse the judgment of the trial court granting the motion to suppress in part as to Counts One and Two and remand the matter to the trial court for

further proceedings according to law.

***Judgment Reversed and***
***Cause Remanded***

**MILLER, and WILLAMOWSKI, J.J., concur.**

**/jlr**