[Cite as *State v. Rhines*, 2025-Ohio-1571.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30279 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 01414 |
| | : | |
| ANTWAN RHINES | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 2, 2025

. . . . . . . . . . .

MICHAEL O. MILLS, Attorney for Appellant

MATHIAS H. HECK, JR., by TRISTAN D. DIEGEL, Attorney for Appellee

. . . . . . . . . . . .

HANSEMAN, J.

{¶ 1} Appellant Antwan Rhines appeals from his conviction in the Montgomery County Court of Common Pleas after pleading no contest to one count of felonious assault with a repeat violent offender specification. In support of his appeal, Rhines contends that

the trial court erred by failing to suppress identification testimony from his former parole officer. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On May 31, 2023, Rhines was indicted on one second-degree-felony count of felonious assault (serious physical harm) in violation of R.C. 2903.11(A) with a repeat violent offender specification. The felonious assault charge stemmed from allegations that on April 18, 2023, Rhines punched a female in the face while at a local bar in Dayton, Ohio. Rhines initially pled not guilty to the charge and filed a motion to suppress all evidence identifying him as the assailant.

{¶ 3} On February 29, 2024, the trial court held a hearing on Rhines's motion to suppress. At the beginning of the hearing, the parties advised the trial court that the victim had never specifically identified Rhines as her assailant but had presented law enforcement with Facebook photographs that depicted the individual who assaulted her. The State explained that law enforcement used those photographs as an "investigatory tool" to help identify Rhines as a suspect. Supp. Hearing Tr., p. 6. The State conceded that the informal Facebook identification was insufficient evidence of Rhines's identification for purposes of trial and stated that it did not intend to present the Facebook photographs as evidence. Instead, the State explained that it planned to offer identification testimony from Rhines's parole officer, Shantel Pickett, who had watched a surveillance video of the felonious assault in question and was able to identify Rhines as the assailant.

{¶ 4} Although not raised in his initial motion to suppress, at the suppression hearing, Rhines argued that Pickett's identification of him should be suppressed under the authority of *Neil v. Biggers*, 409 U.S. 188 (1972). In *Biggers*, the United States Supreme Court explained that an identification derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a defendant's right to due process. *Id.* at 198. The court in *Biggers* also set forth a two-part analysis to determine the admissibility of challenged identification testimony. *State v. Wright*, 2021-Ohio-2133, ¶ 66. For the first part of the analysis, the defendant must demonstrate that the identification procedure was unduly suggestive. *Id.* Second, if the defendant is able to show that the identification procedure was unduly suggestive, the court must then consider whether the identification was, nevertheless, reliable under the totality of the circumstances. *Id.* at ¶ 67; *Biggers* at 197-199. "So long as the identification possesses sufficient aspects of reliability, there is no violation of due process." *State v. White*, 1994 WL 43095, * 2 (2d Dist. Feb. 2, 1994), citing *Biggers*.

{¶ 5} The trial court advised that it would rule on whether the analysis in *Biggers* applied to Rhines's motion to suppress after considering the evidence presented at the suppression hearing. Thereafter, the State called Shantel Pickett to testify. No other witnesses were called at the suppression hearing.

{¶ 6} Pickett testified that she had been employed as a parole officer with the Adult Parole Authority for six to seven years and that her duties included supervising parolees to ensure that they comply with the terms of their post-release control. To accomplish this, Pickett testified that she had regular face-to-face contact with her assigned parolees.

{¶ 7} Pickett confirmed that Rhines had been one of her assigned parolees and that she had supervised him for approximately one and a half years. Pickett testified that she began supervising Rhines in June 2021 and was still actively supervising him at the time of the April 18, 2023 felonious assault. Pickett explained that her supervision of Rhines involved her meeting with Rhines at his house, her office, or elsewhere once a month, and then once every three months. Pickett testified that during her in-person contacts with Rhines, she observed him wearing jackets, t-shirts, and tight-fitting clothing. She also observed him with and without a hat on his head.

{¶ 8} Pickett testified that she became aware of the felonious assault allegations against Rhines and was later asked by the State to watch a surveillance video of the felonious assault to see whether she could identify Rhines as the assailant. Pickett testified that she watched the video sometime in December 2023, when Rhines was no longer on post-release control. The State also played the video for Pickett during the suppression hearing. Pickett's testimony indicated that the assailant in the video was wearing a hat, scarf, and "wife beater" shirt. Supp. Hearing Tr., p. 14 and 20. Pickett testified that, upon watching the video, she recognized Rhines as the assailant based on his build, how his forehead looks when wearing a hat, and by his facial features. Pickett testified that she was 89 to 90 percent certain that Rhines was the assailant in the video.

{¶ 9} Following the suppression hearing, both parties submitted post-hearing briefs for the trial court to consider. In his post-hearing brief, Rhines once again argued that Pickett's identification testimony should be suppressed under the authority of *Biggers*. He also argued that suppression was appropriate because the identification

procedure did not comply with R.C. 2933.83—a statute that governs the administration of live lineups and photo lineups.

{¶ 10} The State, on the other hand, argued that Pickett's identification testimony constituted lay witness opinion testimony that was admissible under Evid.R. 701. Although not argued by Rhines, the State mentioned that Pickett's identification testimony presented a potential unfair prejudice issue under Evid.R. 403 since Pickett was Rhines's parole officer. The State indicated that it intended to resolve the issue by not specifically identifying Pickett as Rhines's parole officer at trial but only admitting evidence showing that Pickett had met with Rhines in person on several occasions and had the opportunity to observe Rhines and his mannerisms.

{¶ 11} After considering Pickett's testimony and the parties' post-hearing briefs, on April 25, 2024, the trial court issued a decision and entry overruling Rhines's motion to suppress. In overruling the motion, the trial court found that the analysis in *Biggers* did not apply to Pickett's identification testimony since Pickett was not an eyewitness to the criminal activity. Instead, the trial court applied Evid.R. 701 and found that Pickett was a lay witness offering opinion testimony regarding the identification of a suspect from a video based on her prior knowledge and interactions with the suspect. The trial court did not discuss R.C. 2933.83 in its decision, and it specifically declined to rule on the potential unfair prejudice issue since Rhines had not addressed that issue in his motion to suppress or in his post-hearing brief.

{¶ 12} Approximately two months after the trial court issued its suppression decision, Rhines pled no contest to the indicted charge of felonious assault with a repeat

violent offender specification. The trial court thereafter sentenced Rhines to an indefinite term of 3 to 4.5 years in prison to be served concurrently to a sentence that Rhines was serving in a separate case out of Warren County. Rhines now appeals from his conviction and raises a single assignment of error for review.

**Assignment of Error**

{¶ 13} Under his sole assignment of error, Rhines challenges the trial court's decision overruling his motion to suppress Pickett's identification testimony. Specifically, Rhines claims that the trial court applied the wrong analysis when ruling on his motion to suppress. According to Rhines, instead of applying Evid.R. 701, the trial court should have applied the analysis in *Biggers*, 409 U.S. 188, and the requirements in R.C. 2933.83. Rhines asserts that under *Biggers* and R.C. 2933.83, the suppression of Pickett's identification testimony is appropriate so as to safeguard his due process right against unduly suggestive identification procedures. We disagree.

*Standard of Review*

{¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "Consequently, an appellate court must accept the

trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).

{¶ 15} Upon review, we find that the trial court's findings of fact are supported by competent, credible evidence in the record and are consistent with the findings of fact recited in this opinion. Using those facts, we will independently apply the relevant law to determine whether the trial court correctly overruled Rhines's motion to suppress.

### *R.C. 2933.83 Does Not Apply to Pickett's Identification Testimony*

{¶ 16} Rhines claims that the trial court should have suppressed Pickett's identification testimony because it failed to comply with the requirements in R.C. 2933.83. "R.C. 2933.83 provides for certain minimum requirements to be followed when conducting 'live lineups or photo lineups.'" *State v. Harrell*, 2024-Ohio-981, ¶ 68 (2d Dist.), citing R.C. 2933.83(B). A "live lineup" is "an identification procedure in which a group of persons, including the suspected perpetrator of an offense and other persons not suspected of the offense, is displayed to an eyewitness for the purpose of determining whether the eyewitness identifies the suspect as the perpetrator of the offense." R.C. 2933.83(A)(7). A "photo lineup" is "an identification procedure in which an array of photographs, including a photograph of the suspected perpetrator of an offense and additional photographs of other persons not suspected of the offense, is displayed to an eyewitness for the purpose

of determining whether the eyewitness identifies the suspect as the perpetrator of the offense." R.C. 2933.83(A)(8).

{¶ 17} R.C. 2933.83 "does not set forth requirements to be followed where only one photo is shown." *Harrell* at ¶ 68. "Courts have held that where only one photo is shown, R.C. 2933.83 does not apply." (Citations omitted.) *State v. McShann*, 2019-Ohio-4481, ¶ 70 (2d Dist.). R.C. 2933.83 also does not apply when an eyewitness is presented with a video or still frame from a video. *State v. Glenn-Coulverson*, 2017-Ohio-2671, ¶ 54 (10th Dist.).

{¶ 18} In this case, Pickett was presented with a surveillance video of the felonious assault in question to see whether she could identify Rhines as the assailant. Pickett was not an eyewitness to the felonious assault and was never presented with a photo lineup or a live lineup when she identified Rhines. Because of this, R.C. 2933.83 does not apply to the identification procedure that was used in this case. Accordingly, Rhines's claim that Pickett's identification testimony should be suppressed for failing to comply with R.C. 2933.83 lacks merit.

### *Biggers Does Not Apply to Pickett's Identification Testimony*

{¶ 19} Rhines also claims that Pickett's identification testimony should have been suppressed under the authority of *Biggers*, 409 U.S. 188. As previously discussed, to address due process concerns regarding misidentification, *Biggers* set forth a two-step analysis to determine the admissibility of a challenged identification: (1) the defendant must demonstrate that the identification procedure was unduly suggestive; and (2) if the

defendant satisfies that burden, the court must then focus on whether the identification was, nevertheless, reliable. *Wright*, 2021-Ohio-2133, at ¶ 66-67 (2d Dist.); *Biggers* at 197-199.

{¶ 20} Multiple courts have concluded that the analysis in *Biggers* does not apply when the identification in question is not by an eyewitness. *See e.g. State v. Aziz*, 2004-Ohio-6631, ¶ 13-16 (8th Dist.) (*Biggers* not relevant to the specific facts of the case since there were no eyewitnesses who identified the appellant as the shooter); *State v. Warner*, 436 S.C. 395, 406-407 (2022) (due process standard in *Biggers* does not apply where identification of defendant from video was not made by an eyewitness to the crime); *Greene v. State*, 469 Md. 156, 170-173 (2020) (surveillance video identification of defendant by an individual who was not an eyewitness to the crime is not governed by the due process analysis in *Biggers*).

{¶ 21} In *Warner*, a surveillance video captured the defendant, Warner, committing attempted armed robbery and murder at a gas station convenience store. *Warner* at 398-399. After receiving an anonymous Crimestoppers tip alleging Warner was the person who committed the crimes, the investigating detective contacted Warner's probation officer and sent the probation officer the surveillance video of the armed robbery to see whether he could identify the person in the video as Warner. *Id.* at 399. The probation officer was able to positively identify Warner as the person in the video, and Warner was charged. *Id.* While his case was pending, Warner requested a "*Biggers* hearing" on grounds that the probation officer identified him in an "unnecessarily suggestive identification procedure." *Id.* at 400. The trial court, however, ruled that *Biggers* was not

applicable because the probation officer was not an eyewitness. *Id.* at 400 and 406. As a result, the trial court declined to hold a *Biggers* hearing. *Id.*

**{¶ 22}** On appeal, the Supreme Court of South Carolina agreed with the trial court's analysis in *Warner* and stated the following:

> In every case decided by the Supreme Court or by this Court under *Biggers* and the line of cases that led to it, the witness who made the identification was an eyewitness to the crime itself, a witness who observed the crime take place in real time. The Supreme Court has given no reason to believe it would extend the *Biggers* analysis beyond eyewitnesses, nor has this Court.
>
> . . . The dangers of misidentification associated with eyewitness identification that threaten "fundamental conceptions of justice" are simply not present in a situation like the one in this case. While we agree with Warner the detective's question suggested to [the probation officer] that Warner is the man in the video, we nevertheless find Warner's due process rights do not require a hearing because [the probation officer] was not an eyewitness to the crime, and thus, *Biggers* does not apply.

*Id.* at 406-407.

**{¶ 23}** The foregoing conclusion in *Warner* is supported by the list of factors that *Biggers* set forth to determine whether an identification is reliable despite an unduly suggestive identification procedure. Those factors are: "(1) the opportunity of the witness to view the defendant at the time of the crime, (2) the witness's degree of attention, (3)

the accuracy of any prior description of the defendant given by the witness, (4) the level of certainty demonstrated by the witness as to the identification, and (5) the length of time between the crime and the identification." (Citations omitted.) *State v. Murphy*, 2023-Ohio-3276, ¶ 32 (2d Dist.); *Biggers,* 409 U.S. at 199-200. It is clear that these factors only apply to an eyewitness of the underlying criminal act. *See Greene*, 469 Md. at 171 (noting that the *Biggers* factors cannot logically be applied to someone who did not witness anything). Accordingly, we agree that the *Biggers* analysis does not extend beyond eyewitness identification.

{¶ 24} With the foregoing principles in mind, we find that the *Biggers* analysis did not apply to Pickett's identification testimony since Pickett was not an eyewitness to the felonious assault at issue. Instead, Pickett was Rhines's former parole officer, who used her prior knowledge and familiarity with Rhines to identify him in a video that depicted the felonious assault. The identification of Rhines in this manner did not implicate the due process concerns discussed in *Biggers*. Therefore, Rhines's claim that the trial court should have applied the analysis in *Biggers* when ruling on his motion to suppress lacks merit.

{¶ 25} That said, even if the *Biggers* analysis did apply to this case, and even if we agreed that the way Pickett was approached by the State to review the video in question was unduly suggestive, the dispositive issue would be whether Pickett's identification of Rhines was otherwise reliable. *See State v. Sherls*, 2002 WL 254144, * 3 (2d Dist. Feb. 22, 2002) (" 'Reliability of the testimony is the linchpin in determining its admissibility. So long as the identification possesses sufficient aspects of reliability, there is no violation of

due process.' ''), quoting *White*, 1994 WL 43095, at *2 (2d Dist. Feb. 2, 1994), citing *Manson v. Brathwaite*, 432 U.S. 98 (1977) and *Biggers*.

{¶ 26} In *State v. Harris*, 2024-Ohio-3329 (2d Dist.), this court found that the identification of the defendant, Harris, by a non-eyewitness, Je'an, was reliable given that Je'an testified to knowing Harris for several years and identified Harris in a photograph. We stated that:

> Je'an's identification of Harris from a photograph did not involve a witness identifying a person who was unknown to them. Although Je'an knew him only as Blakk, Je'an was very familiar with Harris, whom he had known for years. Je'an gave [the detective] information about Blakk and showed [the detective] Harris's Facebook page. Je'an confirmed that a photograph which [the detective] subsequently located was the person he knew as Blakk. As such, we agree with the trial court's finding that this identification was reliable.

*Id.* at ¶ 21.

{¶ 27} Similar to *Harris*, in this case, Pickett's testimony indicated that Pickett was very familiar with Rhines, as she testified to knowing Rhines for over a year and to having multiple face-to-face interactions with him. Pickett's testimony also indicated that her interactions with Rhines allowed her to observe his build, clothing, and facial features. Given Pickett's level of interaction with Rhines, we find that her identification of him in the video of the felonious assault was sufficiently reliable so as to overcome Rhines's due process argument.

*Pickett's Identification Testimony Was Admissible Lay Witness Opinion Testimony*

**{¶ 28}** Evid.R. 701 governs opinion testimony by lay witnesses and provides that such testimony "is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." We note that "[t]rial courts have 'considerable discretion in admitting the opinion testimony of lay witnesses.' " *Brown v. Burnett*, 2020-Ohio-297, ¶ 65 (2d Dist.), quoting *State v. Marshall*, 2010-Ohio-5160, ¶ 43 (2d Dist.).

**{¶ 29}** "Pursuant to Evid.R. 701, courts have allowed identification testimony from videos where that evidence is based on the perception of the witness and is helpful to the determination of the fact in issue." *State v. Tomlinson*, 2022-Ohio-2575, ¶ 20 (8th Dist.), citing *State v. Hopkins*, 2021-Ohio-4632, ¶ 50-61 (7th Dist.), *State v. Coots*, 2015-Ohio-126 (2d Dist.), *State v. Donlow*, 2021-Ohio-3019 (7th Dist.), and *State v. Bond*, 2011-Ohio-6828 (10th Dist.).

**{¶ 30}** In *Coots*, a police sergeant provided lay opinion testimony identifying the defendant, Coots, as a robbery suspect in a surveillance video. The sergeant testified that over a period of two years, he had worked with Coots on several police investigations, and that, from his close contact with Coots, he had become very familiar with Coots's physical mannerisms and the sound of his voice. *Coots* at ¶ 10. The sergeant also testified that he was sufficiently familiar with Coots's gait and posture that he could make a positive identification from the video. *Id.* at ¶ 19. Under these circumstances, this court found no

error in the identification under Evid.R. 701 and concluded that "the jury could have reasonably determined for itself whether [the sergeant's] identification of Coots as the perpetrator was reasonable under the circumstances." *Id.*

{¶ 31} Similarly, in *Bond*, the Tenth District Court of Appeals upheld the trial court's decision to admit a probation officer's and detective's identifications of the defendant from a surveillance video and still-shot photographs. The probation officer testified that she knew the defendant from 2007 to 2010, met him face to face 26 times, and recognized his face and build in the surveillance video and still-shot photographs. *Bond* at ¶ 6, 8, and 17. The detective testified that after meeting with the defendant in 2010, he recognized the defendant in the surveillance video based on his mannerisms, the way he walked, his facial features, thinning hairline, and by his height, weight and build. *Id.* at ¶ 6, 9, and 18. Based on the probation officer's and detective's testimony, the Tenth District Court of Appeals held that "the trial court reasonably could conclude the witnesses' opinions were those that a rational person would form on the basis of the observed facts." *Id.* at ¶ 19. The court also determined that the witnesses' identification of the defendant from the surveillance video and still-shot photographs was helpful to the jury. *Id.* at ¶19-24. Accordingly the court found the identification testimony admissible under Evid.R. 701. *Id.* at ¶ 24.

{¶ 32} In this case, Pickett testified that she had actively supervised Rhines for approximately one and a half years beginning in June 2021. Pickett testified that her supervision of Rhines caused her to have face-to-face contact with him on several occasions during which she observed Rhines wearing jackets, t-shirts, tight-fitting

clothing, and sometimes hats. Pickett testified that she recognized Rhines in the video of the felonious assault based on his build, how his forehead looked when wearing a hat, and by his facial features. Because this testimony was rationally based on Pickett's observations of Rhines and would have been helpful to a jury in identifying Rhines as the suspect in the video, we find that, pursuant Evid.R. 701, Pickett's identification testimony was admissible, and that the trial court did not err by failing to suppress it.

*Unfair Prejudice Issue*

{¶ 33} In his appellate brief, Rhines briefly mentions that the State conceded that Pickett's identification testimony presented a possible evidentiary issue under Evid.R. 403. Evid.R. 403(A) governs the mandatory exclusion of relevant evidence and provides that: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 34} During the suppression proceedings, the State recognized that since Pickett is Rhines's parole officer, Rhines's status as a parolee might reflect negatively on him and result in unfair prejudice. As previously discussed, the State advised the trial court that it intended to resolve the unfair prejudice issue by not identifying Pickett as Rhines's parole officer in front of the jury and only admitting evidence showing that Pickett had met with Rhines in person on several occasions and had the opportunity to observe Rhines and his mannerisms.

{¶ 35} Regardless of the State's proposed remedy, we need not decide the Evid.R.

403 issue since the trial court specifically declined to rule on it because Rhines had not addressed it in his motion to suppress or in his post-hearing brief. " 'A claim is not ripe for appellate review unless the trial court "has arrived at a definitive position on the issue that inflicts an actual, concrete injury." ' " *Gibson v. Gibson*, 2023-Ohio-1072, ¶ 14 (2d Dist.), quoting *Rickard v. Solley*, 2010-Ohio-2786, ¶ 33 (7th Dist.), quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 14-15 (1988). "Therefore, 'an appellate court limits its review to issues actually decided by the trial court in its judgment.' " *Id.*, quoting *Lycan v. Cleveland*, 2016-Ohio-422, ¶ 21, citing *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 89 (1992) (declining to rule on an issue not decided by the trial court). Because the trial court did not decide the Evid.R. 403 issue when ruling on Rhines's motion to suppress, we decline to review that issue in this appeal.

**{¶ 36}** After independently applying the relevant law to Pickett's identification testimony, for the reasons discussed in this opinion, we find that the trial court did not err by overruling Rhines's motion to suppress. Accordingly, Rhines's sole assignment of error is overruled.

## Conclusion

**{¶ 37}** Having overruled Rhines's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.